UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| LAKISHA T. SMITH,<br><br>                Plaintiff,<br><br>vs.<br><br>STELLAR RECOVERY, INC. and<br>COMCAST CORPORATION, and<br>COMCAST OF DETROIT, LLC,<br><br>                Defendants. | Case No.: 15-cv-11717<br>Hon. Stephen J. Murphy, III<br>Hon. Magistrate Mona K. Majzoub |

## DEFENDANT STELLAR RECOVERY'S MOTION
## FOR PARTIAL SUMMARY JUDGMENT

Defendant, STELLAR RECOVERY, INC., by and through its undersigned counsel, pursuant to Fed. R. Civ. P. 56 and Local Rule 7.1, and for the reasons set forth in the attached Memorandum, hereby moves this Court for entry of partial summary judgment.

As set forth more fully in the accompanying Memorandum of Law, at the close of extensive discovery in this matter there is no genuine dispute as to any material fact concerning certain calls made to Plaintiff by Defendant, and Defendant is entitled to summary judgment on those claims.

WHEREFORE, Defendant, STELLAR RECOVERY, respectfully requests this Court grant its motion for partial summary judgment, enter judgment in its favor on those claims, and for such other relief as this Court deems proper.

Dated: July 14, 2016.                                                Respectfully submitted,

                                                                    /s/ Alison N. Emery
                                                                    Alison N. Emery
                                                                    Assurance Law Group
                                                                    3731 Hendricks Avenue
                                                                    Jacksonville, FL 32207
                                                                    904-497-4904 (phone)
                                                                    904-458-8979 (fax)
                                                                    alison@assurancelawgroup.com

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES………………………………………………………...……………ii

INDEX OF EXHIBITS……………………………………………………………………………iv

CONSISE STATEMENT OF ISSUE(S) PRESENTED…………………………………………..v

INTRODUCTION…………………………………………………………………………………1

STATEMENT OF UNDISPUTED FACTS……………………………………………………….2

STANDARD OF REVIEW………………………………………………………………………..6

LEGAL ARGUMENT……………………………………………………………………………..7

    A. Defendant is entitled to summary judgment with respect to Plaintiff's
       TCPA claims for the 19 calls made on the HCI system……………………………..7

CONCLUSION…………………………………………………………………………………...12

# **TABLE OF AUTHORITIES**

**CASES:**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 252 (1986)……………………………..…………………………...6

*Binay v. Bettendorf*,
    601 F.3d 640, 646 (6th Cir. 2010)…………………………………………………..6

*Bowling v. Wal-Mart Stores, Inc.*,
    233 Fed. Appx. 460, 466 (6th Cir. 2007)…………………………………………..7

*Brown v. NRA Group, LLC*,
    (M.D. Fla. June 5, 2015)…………………………………………………………..8

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)…………………….6, 7

*Cox v. Kentucky Dept. of Transp.*,
    53 F.3d 146 (6th Cir. 1995)……………………….………………………………6

*Dobbin v. Wells Fargo Auto Fin., Inc.*,
    (N.D. Ill. June 14, 2011)…………………………………………………………..9

*Estrella v. Ltd. Fin. Services, L.P.*,
    (M.D. Fla. August 24, 2015)……………………………………………………9

*Glauser v. GroupMe, Inc.*,
    2015 WL 475111, *6 (N.D. Cal. Feb 4, 2015)………………………………….8, 9

*Goad v. Censeo Health, LLC*,
    2016 WL 2944658, *2 (E.D. Ark. May 19, 2016)……………………………….10

*Gragg v. Orange Cab Co., Inc.*,
    995 F. Supp. 2d 1189, 1194 (W.D. Wash. 2014)…………………………………..9

*Klepper v. First Am. Bank*,
    916 F.2d 337, 342 (6th Cir. 1990)………………………………………………...6

*Luna v. Shac*,
    2015 WL 4941781 (N.D. Cal. Aug. 19, 2015)……………………………………8

*Marks v. Crunch San Diego, LLC*,
    55 F. Supp. 3d 1288, 1292 (S.D. Cal. 2014)……………………………………..9

*Matsushita Electric. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574, 586 (1986)…………………………………………………………6

*McKenna v. WhisperText*,
    2015 WL 428728, *4 (N.D. Cal. Jan 30, 2015)……………………………....…9

*Modica v. Green Tree*
    (N.D. Ill. Apr. 29, 2015)………………………………………………………10

*Strauss v. The CBE Group, Inc.*,
  2016 WL 1273913, *1, *4-5 (S.D. Fla. March 28, 2016)…………………………………9

*Wilcox v. Green Tree Servicing, LLC*,
  (M.D. Fla. May 5, 2015)……………………………………………………………………..8

**FEDERAL RULES:**

Fed. R. Civ. P. 56(c)………………………………………………………………………………6

Fed. R. Civ. P. 56(e)(2)……………………………………………………………………………6

**FEDERAL STATUTES:**

47 U.S.C. § 227(a)(1)……………………………………………………………………………...7

47 U.S.C. § 227(b)(1)(A)(iii)……………………………………………………………………...7

**FCC REPORTS AND DECISIONS:**

*In the Matter of Rules and Regulations Implementing the Telephone Consumer
  Protection Act of 1991,* 23 F.C.C.R. 559, 566 (Jan. 4, 2008)……………………………..8

*In the Matter of Rules and Regulations Implementing the Telephone Consumer
  Protection Act of 1991*, 27 FCC Rcd. at 15392, n. 5 (November 26, 2012)………………8

*In the Matter of Rules and Regulations Implementing the Telephone Consumer
  Protection Act of 1991*, 30 FCC Rcd. 7961 ¶¶ 16-20 (FCC July 10, 2015)…………10, 11

## **INDEX OF EXHIBITS**

**EXHIBIT A**       Stellar's Interrogatory Responses

**EXHIBIT B**       June 14, 2016 Deposition Transcript of Rachel Frady, Chief Compliance Officer of Defendant Stellar Recovery, Inc.

**EXHIBIT C**       Call Log

**EXHIBIT D**       June 15, 2016 Deposition Transcript of Kevin Stark, Director of Product Management of LiveVox, Inc.

## **CONCISE STATEMENT OF ISSUE(S) PRESENTED**

Whether the HCI system utilized by Defendant to make some of the calls to Plaintiff is an Automatic Telephone Dialing System under the Telephone Consumer Protection Act ("TCPA")?

Stellar's response would be "no"; Plaintiff's "yes."

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| LAKISHA T. SMITH,<br><br>                        Plaintiff,<br><br>    vs.<br><br>STELLAR RECOVERY, INC. and COMCAST CORPORATION, and COMCAST OF DETROIT, LLC,<br><br>                        Defendants. | Case No.: 15-cv-11717<br>Hon. Stephen J. Murphy, III<br>Hon. Magistrate Mona K. Majzoub |
| **BRIEF IN SUPPORT OF DEFENDANT STELLAR RECOVERY'S MOTION FOR PARTIAL SUMMARY JUDGMENT** | |

**INTRODUCTION**

Plaintiff commenced this action by filing her Complaint alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et. seq. ("TCPA"), the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"), the Michigan Occupational Code, M.C.L. § 339.901, et. seq. ("MOC"), and the Michigan Collection Practices Act, M.C.L. § 445.251, et. seq. ("MCPA"). On July 14, 2015, Plaintiff filed her First Amended Complaint which is the operative Complaint at this time. Plaintiff's claims arise out of a series of telephone calls made to her cellular telephone by Defendant Stellar Recovery ("Stellar") in an attempt to collect a debt owed by Plaintiff to Comcast. The majority of these calls were made by Stellar using LiveVox's Human Call Initiator ("HCI") system, a system which was designed and engineered for TCPA compliance. LiveVox's HCI system lacks the capacity to make calls without human intervention, and it is the

1

Defendant's position that therefore the LiveVox HCI system does not constitute an automatic telephone dialing system ("ATDS") under the TCPA and there can consequently be no liability under the TCPA for the calls at issue. Through the instant motion, Defendant seeks partial summary judgment. Specifically, Defendant is entitled to judgment as a matter of law with respect to Plaintiff's TCPA claims for all calls made on the LiveVox HCI system—19 calls between August 2014 and October 2014, and 4 calls between May 2016 and June 2016, for a total of 23 calls made on the LiveVox HCI system.

I.   **STATEMENT OF UNDISPUTED FACTS**

1. On or about June 21, 2014, Stellar was retained by Comcast to collect a past due debt obligation from the Plaintiff. **[See Stellar's Interrogatory Responses, Interrogatory 11, Page 14, attached hereto as Exhibit A].**

2. Stellar obtained phone number 313-718-5938 as a number associated with Plaintiff. This number was obtained from a skip trace vendor. **[See Deposition of Rachel Frady, Page 26, Lines 13-16, attached hereto as Exhibit B].**

3. 313-718-5938 was the Plaintiff's cell phone number. **[See Deposition of Rachel Frady, Page 24, Lines 23-25 and Page 25, Lines 1-25, attached hereto as Exhibit B.]**

4. On July 18, 2014 Stellar began attempting to reach Plaintiff by calling 313-718-5938. [**See Deposition of Rachel Frady, Page 27, Lines 10-18, attached hereto as Exhibit B].**

5. LiveVox is Stellar's telephone vendor and all calls made to Plaintiff were made utilizing LiveVox systems. [**See Stellar's Interrogatory Responses, Interrogatory 13, Page 16, attached hereto as Exhibit A].**

6. Stellar dialed Plaintiff's phone number using a Right Party Connect ("RPC") campaign from July 18, 2014 through August 8, 2014 for a total of 12 calls. [**See Call Log**

attached hereto as Exhibit C, and Stellar's Interrogatory Responses, Interrogatory 13, Page 16, attached hereto as Exhibit A].

7. The 12 RPC calls were made on an automated dialer system. [**See Deposition of Rachel Frady, Page 28, Lines 9-12, attached hereto as Exhibit B, and Stellar's Interrogatory Responses, Interrogatory 13, Page 16, attached hereto as Exhibit A**].

8. On August 13, 2014 Stellar stopped calling Plaintiff's number from the automated dialer and began dialing it using the LiveVox Human Call Initiator ("HCI") system. [**See Deposition of Rachel Frady, Page 28, Lines 21-25 and Page 29, Lines 1-3, attached hereto as Exhibit B**].

9. From August 12, 2014 through October 28, 2014 Stellar placed 19 calls to Plaintiff's cell phone using the LiveVox HCI system. [**See Stellar's Interrogatory Responses, Interrogatory 13, Page 16, attached hereto as Exhibit A**].

10. In May and June 2016, during the pendency of this case, Stellar placed an additional four calls to Plaintiff's cell phone as a result of having a new collection account placed by Comcast with which Plaintiff's phone number was associated. These calls were also placed on the LiveVox HCI system. [**See Deposition of Rachel Frady, Page 37, Lines 15-25, Page 38, Lines 1-25, Page 39, Lines 1-25, and Page 40, Lines 1-8, attached hereto as Exhibit B**]

11. LiveVox is a "hosted" call provider and hosts calling software and hardware for Stellar in their (LiveVox's) New York City data center facility. [**See Deposition of Kevin Stark, Page 56, Line 6 and Page 11, Lines 7-8, attached hereto as Exhibit D**].

12. Stellar accesses LiveVox's outbound dialing systems remotely, through a dedicated website. [**See Deposition of Kevin Stark, Page 56, Lines 7-12 and Page 24, Lines 24-25, attached hereto as Exhibit D**].

3

13. LiveVox offers four separate outbound dialing systems to its clients: one automated outbound dialing system and three human initiated outbound dialing systems. Each LiveVox dialing system is distinct from each other dialing system: each system has its own dedicated and separate hardware and software. **[See Deposition of Kevin Stark, Page 26, Line 15, and Page 49, Lines 8-9, attached hereto as Exhibit D].**

14. HCI is one of LiveVox's human-initiated outbound dialing systems. The hardware and software components used by the HCI system to launch telephone calls are not shared with any of the other LiveVox systems; those components are unique to the HCI system. **[See Deposition of Kevin Stark, Page 58, Lines 6-18, attached hereto as Exhibit D].**

15. LiveVox's HCI outbound dialing system was architected and designed specifically to comply with the TCPA. **[See Deposition of Kevin Stark, Page 58, Lines 20-24, attached hereto as Exhibit D].**

16. The LiveVox HCI system lacks the capacity to store phone numbers. It was expressly designed and built to have no capacity to store phone numbers and is incapable of doing so. **[See Deposition of Kevin Stark, Page 15, Lines 17-19, attached hereto as Exhibit D].**

17. No automated or prerecorded messages can be left on a call made using the HCI system. [**See Deposition of Kevin Stark, Page 44, Lines 13-22, attached hereto as Exhibit D].**

18. The LiveVox HCI system is not capable of predictive dialing. **[See Deposition of Kevin Stark, Page 60, Lines 6-12, attached hereto as Exhibit D].**

19. A "clicker agent" at Stellar is responsible for initiating each call made by Stellar using the LiveVox HCI system. **[See Deposition of Kevin Stark, Page 20, Lines 6-7, and Page 28, Lines 10-11, attached hereto as Exhibit D].**

20. The ACD is a separate computer component from the HCI dialing system. It is not part of the LiveVox HCI outbound dialing system. [**See Deposition of Kevin Stark, Page 28, Lines 15-25; Page 29, Lines 1-8; Page 60, Lines 24-25, and Page 61, Lines 1-5, attached hereto as Exhibit D**].

21. In the LiveVox HCI system, the telephone numbers are presented to the clicker agents based upon the availability of "closer agents" to take the calls after they are launched. [**See Deposition of Kevin Stark, Page 30, Lines 16-23, attached hereto as Exhibit D**].

22. Calls cannot be made using the LiveVox HCI system unless closer agents are available to speak with the call recipient. [**See Deposition of Kevin Stark, Page 30, Lines 14-23; Page 59, Lines 6-20, attached hereto as Exhibit D**].

23. Every call on the LiveVox HCI system requires "direct human intervention—direct human action" [**See Deposition of Kevin Stark, Page 56, Lines 21-22, and Page 36, Lines 9-10, attached hereto as Exhibit D**], which consists of "a click of the mouse or press the enter [key] on the keyboard." [**See Deposition of Kevin Stark, Page 56, Lines 23-25 and Page 57, Line 1, attached hereto as Exhibit D**]. Clicker agents also exercise judgment in their launching of calls. [**See Deposition of Kevin Stark, Page 59, Lines 17-20, attached hereto as Exhibit D**].

24. Clicker agents logged on to LiveVox's HCI system cannot be logged on to any other dialing system. [**See Deposition of Kevin Stark, Page 60, Lines 2-5, attached hereto Exhibit D**].

25. The LiveVox HCI system does not have the capacity to autodial a phone number. [**See Deposition of Kevin Stark, Page 60, Lines 6-8, attached hereto as Exhibit D**].

26. The LiveVox HCI system does not have the capacity to store or produce numbers to be called using a random or sequential number generator. [**See Deposition of Kevin Stark, Page 60, Lines 9-12, attached hereto as Exhibit D].**

## II. STANDARD OF REVIEW

Summary judgment is appropriate only when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Where the non-moving party bears the burden of proof on an issue at trial, the movant may simply "[point] out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). "There must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby*, *Inc*., 477 U.S. 242, 252 (1986). To avoid summary judgment, the non-moving party "must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Electric. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). Instead, he must present "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *Zenith*, 475 U.S. at 587 (emphasis omitted). There is not a genuine issue for trial if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party . . ." *Zenith*, 475 U.S. at 587. A nonmoving party may not avoid a properly supported motion for summary judgment by simply arguing that it relies solely or in part upon credibility considerations or subjective evidence. *Cox v. Kentucky Dept. of Transp*., 53 F.3d 146, 149-50 (6th Cir. 1995).

"The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"

*Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010) (citation omitted). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322 (1986).

Further, Rule 56 serves a useful purpose; District Courts should support the "principal purpose of the summary judgment rule ... to isolate and dispose of factually unsupported claims or defenses." *Bowling v. Wal-Mart Stores, Inc.*, 233 Fed. Appx. 460, 466 (6th Cir. 2007) (citing *Celotex Corp.*, 477 U.S. at 323-24).

### III.   LEGAL ARGUMENT

#### A. Defendant is entitled to summary judgment with respect to Plaintiff's TCPA claims for the 19 calls made on the HCI system

Plaintiff's claims of TCPA violations by Defendant are premised upon her allegations that Defendant placed calls to Plaintiff's cellular number using an Automatic Telephone Dialing System ("ATDS"). Accordingly, in order to prevail on this claim under the TCPA, Plaintiff must establish that each call in question was made using an ATDS.

The relevant section of the TCPA provides:

RESTRICTIONS ON THE USE OF AUTOMATED TELEPHONE EQUIPMENT
(1) PROHIBITIONS – It shall be unlawful for any persons within the United States
(A) To make any call (other than a call…made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice-
(iii) to any telephone number assigned to a…cellular telephone service…

See 47 U.S.C. § 227(b)(1)(A)(iii).

The term "automatic telephone dialing system" is statutorily defined as "equipment which has the capacity to both: (1) store or produce telephone numbers to be called, using a random or sequential number generator, and (2) dial such numbers." 47 U.S.C. § 227(a)(1). Although this

7

definition appears straightforward at first glance, since it was first promulgated in 1991 the FCC has been expanding upon it, and courts have ruled that an appropriate analysis of what constitutes an ATDS must also include the FCC interpretations. *Luna v. Shac*, 2015 WL 4941781 (N.D. Cal. Aug. 19, 2015). In a 2008 analysis, the FCC opined that the defining characteristic of an ATDS is "the capacity to dial numbers without human intervention," *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 23 F.C.C.R. 559, 566 (Jan. 4, 2008), and in 2012 they referred to the definition of "autodialer" as encompassing "any equipment that has the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers are randomly or sequentially generated or come from calling lists." See *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd. at 15392, n. 5 (November 26, 2012). Based on this definition, courts analyzing the issue have held that in order for liability to arise as an ATDS under the TCPA, the system in question MUST have the capacity to dial numbers without human intervention. *Glauser v. GroupMe, Inc*., 2015 WL 475111, *6 (N.D. Cal. Feb 4, 2015); *Luna* at 5. As one court succinctly stated, "the primary consideration under the FCC order is whether human intervention is required at the point in time at which the number is dialed." *Brown v. NRA Group, LLC*, (M.D. Fla. June 5, 2015).

Expanding on this, the distinction between equipment which requires human intervention and equipment which does not (and therefore cannot give rise to TCPA liability) has been described as follows:

> The key feature of an ATDS is the capacity to dial numbers without human intervention….if the agent selects the number to be called, then the call would be made as a result of human intervention, and the call would not be made using an ATDS.

*Wilcox v. Green Tree Servicing, LLC*, (M.D. Fla. May 5, 2015).

Many other courts have addressed dialing systems requiring human intervention to initiate calls; each of those courts has granted summary judgment (or a motion to dismiss) dismissing TCPA claims as a matter of law, repeatedly holding that a dialing system requiring human intervention (even in the form of a single click) in order to place calls (or send text messages) is not an ATDS. See *Strauss v. The CBE Group, Inc.*, 2016 WL 1273913, *1, *4-5 (S.D. Fla. March 28, 2016) (granting summary judgment to defendant on calls made using dialing system in which, in order for a call to be made, "an agent must manually initiate the call by clicking a mouse or pressing a keyboard enter key"); *Glauser*, 2015 WL 475111 at *6 (granting defendant's motion for summary judgment and holding dialing system was not an ATDS; human intervention found where user sent telephone numbers to system, which "triggered" system to send texts); *McKenna v. WhisperText*, 2015 WL 428728, *4 (N.D. Cal. Jan 30, 2015) (granting motion to dismiss, system was not an ATDS where it sent automated text messages to list of contacts based on user's single affirmative direction); *Estrella v. Ltd. Fin. Services, L.P.*, (M.D. Fla. August 24, 2015) (granting defense summary judgment motion and finding that a "point and click" function constituted sufficient human intervention to defeat Plaintiff's TCPA claim); *Marks v. Crunch San Diego, LLC*, 55 F. Supp. 3d 1288, 1292 (S.D. Cal. 2014) (granting defense motion for summary judgment, system not an ATDS where system could only send text messages to numbers entered through "human curation and intervention"); *Gragg v. Orange Cab Co., Inc*., 995 F. Supp. 2d 1189, 1194 (W.D. Wash. 2014) (defendant granted summary judgment; system not an ATDS where human intervention consisted of taxi cab dispatcher pressing "enter" to transmit text message); *Dobbin v. Wells Fargo Auto Fin., Inc*., (N.D. Ill. June 14, 2011) (granting defense motion for summary judgment and finding that human intervention was required where an agent was required to "click" on a phone number in order to dial it and therefore that the system was not an ATDS). Indeed,

Defendant understands that every court to consider single-click human intervention, such as that LiveVox's HCI system employs in order to initiate telephone calls, has held that action to be sufficient human intervention for the dialing system not to be considered an ATDS as a matter of law.[1]

The fact that numbers are presented to clicker agents making phone calls using LiveVox's HCI system (hereinafter "HCI") via a separate computer component does not change the analysis. A court recently granted summary judgment for a defendant on a TCPA claim where a separate computer component displayed phone numbers to employees and those employees manually dialed those numbers. See *Goad v. Censeo Health, LLC*, 2016 WL 2944658, *2 (E.D. Ark. May 19, 2016). The *Goad* Court noted that the separate computer component did not have a dialing mechanism and was separate from the dialing system used to place the calls. *Id.* Similarly, courts have held that where an automated dialer coexists with a manual dialer, even minimal separation is enough to differentiate the two. For example, in *Modica v. Green Tree*, neither the automated system nor the manual system in question could dial without an agent being logged in. (N.D. Ill. Apr. 29, 2015). As the court stated, discussing the manual system (as opposed to the automated system, or "dialer") that the agent was logged into, "It is true that the additional step of logging into the dialer is minimal….nonetheless, [the agent] did not take that step and the equipment…was not capable of dialing numbers…." and was therefore not an ATDS. *Id.* at 7. Similarly, clicker agents logged on to HCI cannot be logged on to other dialing systems. Thus, the HCI outbound

---

[1] Closely related to single click human intervention, the FCC has stated that the TCPA's prohibitions do not extend to speed dialing; See *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961 ¶¶ 16-20 (FCC July 10, 2015), p. 14, paragraph 17.

dialing system is logically and physically separated from the ACD and from LiveVox's automated dialing system, and is thus not an ATDS.

HCI also lacks the potential capacity to dial without human intervention, another reason it cannot be considered an ATDS. The FCC has ruled that a dialing system's "potential functionalities" should be considered when determining whether or not that system is an ATDS. See *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961 ¶¶ 16-20 (FCC July 10, 2015). But potential capacity does not extend to "every piece of malleable or modifiable dialing equipment that conceivably could be considered to have some capacity;" the potential capacity to modify the dialing system to become an ATDS must be real, and not merely "theoretical." *Id.* at ¶ 18. HCI was specifically designed and built to have no capacity to store phone numbers, autodial, or make phone calls without human intervention. As the LiveVox witness testified regarding the capacity of HCI to store numbers, HCI does not store numbers and cannot be reconfigured to store numbers: "The system would have to be completely torn down and rebuilt as something new for any number storage to be present." [Deposition of Kevin Stark, Page 15, Line 25, Page 16, Lines 1-2, attached hereto as Exhibit D]. Accordingly, HCI does not have the actual or potential capacity to perform autodialing functions; any capacity is in the theoretical realm, an alternative world in which HCI was not designed and built as it actually was.[2] The TCPA, and more specifically, the meaning of "capacity" cannot be read that broadly, for doing so would sweep essentially every piece of dialing equipment within the scope of the statute's definition of ATDS, a result expressly rejected by the FCC.

---

[2] Discussing the expansion of a stadium from holding 80,000 people to 104,000, the FCC states: "Indeed, adding space to accommodate 25 percent more people to a building is the type of mere "theoretical" modification that is insufficient to sweep it into our interpretation of 'capacity.'" See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 30 FCC Rcd. 7961 ¶¶ 16-20 (FCC July 10, 2015), p. 14, paragraph 16.

In the instant case, the undisputed facts demonstrate that the 19 calls placed from August 12, 2014 through October 28, 2014, and the four calls that were placed in May and June 2016 were made via LiveVox's HCI system. As demonstrated by the record evidence, all calls made with the LiveVox HCI system required human intervention, specifically, a clicker agent launching each call with the Enter key or a click of a mouse, plus the clicker agent's judgment and discretion in determining when and how rapidly to click. Plaintiff has no evidence to counter the testimony from non-party LiveVox expressly demonstrating that the HCI dialing system *requires* human intervention in order to make a call. The HCI dialing system cannot make calls without human intervention, and does not have the actual or potential capacity to autodial or perform other functions of an ATDS. As a result, HCI is not an ATDS.

## IV.   Conclusion

The record evidence in this case confirms that the calls made to Plaintiff on the LiveVox HCI system were made with direct human intervention and independent of any automated or predictive functionality. Therefore, the calls at issue were not made on an ATDS and Defendant is entitled to judgment as a matter of law with respect to those calls.

Dated: July 14, 2016.

                                Respectfully submitted,

                                */s/Alison N. Emery*
                                Alison N. Emery
                                Assurance Law Group
                                3731 Hendricks Avenue
                                Jacksonville, FL 32207
                                904-497-4904 (phone)
                                904-458-8979 (fax)
                                alison@assurancelawgroup.com

## **CERTIFICATE OF SERVICE**

I, Alison N. Emery, Counsel for Defendant Stellar Recovery hereby certify that on July 14, 2016, I electronically filed the foregoing document and exhibits referenced herein with the Clerk of Court for the United States District Court, Eastern District of Michigan, Southern Division, using the ECF system, which will send notification of such filing to the attorneys of record.

                                                    /s/Alison N. Emery
                                                    ALISON N. EMERY, Esquire
                                                    Counsel for Defendant