# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

LAKISHA T. SMITH,

Plaintiff,

vs.

STELLAR RECOVERY, INC. and
COMCAST CORPORATION, and
COMCAST OF DETROIT, LLC,

Defendants.

Case No.: 15-cv-11717
Hon. Stephen J. Murphy, III
Hon. Magistrate Mona K. Majzoub

---

## DEFENDANT, STELLAR RECOVERY, INC'S, BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

i

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………...……………iii

INDEX OF EXHIBITS……………………………………………………………………….v

INTRODUCTION…………………………………………………………………………1

RESPONSES TO PLAINTIFF'S STATEMENT OF ALLEGEDLY UNDISPUTED FACTS…..2

COUNTERSTATEMENT OF UNDISPUTED FACTS…………………………………...……11

STANDARD OF REVIEW……………………………………………………….………..14

LEGAL ARGUMENT…………………………………………………………………....15

     A. Stellar is Not Liable Under the TCPA, Because the HCI System is Not an Automatic Telephone Dialing System (ATDS)…………………………………………………15

     B. Plaintiff's Motion Completely Misrepresents the Record Regarding LiveVox's HCI System…………………………………………………………………………..20

     C. Plaintiff's Motion is Premised on a Definition of "Human Intervention" That is Unsupported by Applicable Law……………………………………………………23

CONCLUSION…………………………………………………………………………...25

# TABLE OF AUTHORITIES

## CASES:

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242, 252 (1986)…………………………..…………………..…...14

*Brown v. NRA Group, LLC*,
 (M.D. Fla. June 5, 2015)……………………………………………………16

*Celotex Corp. v. Catrett*,
 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)…………………………...14

*In re Collecto, Inc. Telephone Consumer Protection Act Litig.*, *Dobbin v. Wells Fargo Auto Fin., Inc.*,
 2016 WL 552459 (D. Mass. Feb. 10, 2016)…………………………………………24

*Estrella v. Ltd. Fin. Services, L.P.*,
 (M.D. Fla. August 24, 2015)……………………………………..………17, 24

*Gaza v. Ltd. Fin. Services, L.P.*
 2015 U.S. Dist. LEXIS 111751 (M.D. Fla. Aug. 24, 2015)………………………...……...24

*Glauser v. GroupMe, Inc.*,
 2015 WL 475111, *6 (N.D. Cal. Feb 4, 2015)………………………...……16, 17, 24

*Goad v. Censeo Health, LLC*,
 2016 WL 2944658, *2 (E.D. Ark. May 19, 2016)…………………………………18

*Gragg v. Orange Cab Co., Inc.*,
 995 F. Supp. 2d 1189, 1194 (W.D. Wash. 2014)………………………………...17, 23, 24

*Klepper v. First Am. Bank*,
 916 F.2d 337, 342 (6th Cir. 1990)……………………………………………14

*Luna v. Shac*,
 2015 WL 4941781 (N.D. Cal. Aug. 19, 2015)……………………………………..16

*Marks v. Crunch San Diego, LLC*,
 55 F. Supp. 3d 1288, 1292 (S.D. Cal. 2014)…………………………..………17, 24

*Matsushita Electric. Indus. Co. v. Zenith Radio Corp.*,
 475 U.S. 574, 586 (1986)……………………………………………………...…14

*McKenna v. WhisperText*,
 2015 WL 428728, *4 (N.D. Cal. Jan 30, 2015)……………………………..………17, 24

*Modica v. Green Tree*
 (N.D. Ill. Apr. 29, 2015)…………………………………………………21

*Strauss v. The CBE Group, Inc.*,
 2016 WL 1273913, *1, *4-5 (S.D. Fla. March 28, 2016)……………………………17, 24

*Wilcox v. Green Tree Servicing, LLC*,
(M.D. Fla. May 5, 2015)………………………………………………………………17

**FEDERAL RULES:**

Fed. R. Civ. P. 56(c)………………………………………………………………..14

**FEDERAL STATUTES:**

47 U.S.C. § 227(a)(1)………………………………………………………………15
47 U.S.C. § 227(b)(1)(A)(iii)………………………………………………………15

**FCC REPORTS AND DECISIONS:**

*In the Matter of Rules and Regulations Implementing the Telephone Consumer
Protection Act of 1991,* 23 F.C.C.R. 559, 566 (Jan. 4, 2008)……………………………16

*In the Matter of Rules and Regulations Implementing the Telephone Consumer
Protection Act of 1991,* 27 FCC Rcd. at 15392, n. 5 (November 26, 2012)……………..16

*In the Matter of Rules and Regulations Implementing the Telephone Consumer
Protection Act of 1991,* 30 FCC Rcd. 7961 ¶¶ 16-20 (FCC July 10, 2015)……………..19

## <u>INDEX OF EXHIBITS</u>

**EXHIBIT A**          Stellar's Interrogatory Responses

**EXHIBIT B**          June 14, 2016 Deposition Transcript of Rachel Frady, Chief Compliance
                        Officer of Defendant Stellar Recovery, Inc.

**EXHIBIT C**          June 15, 2016 Deposition Transcript of Kevin Stark, Director of Product
                        Management of LiveVox, Inc.

**EXHIBIT D**          May 18, 2016 Deposition Transcript of Kendra Vallarelli, Chief Analytics
                        Officer of Defendant Stellar Recovery, Inc.

**EXHIBIT E**          August 3, 2016 Declaration of Kevin Stark, Director of Product
                        Management of Livevox, Inc.

**EXHIBIT F**          Call Log

# I.      <u>INTRODUCTION</u>

On July 14, 2015, Plaintiff filed her First Amended Complaint in this matter, the currently operative complaint. (D.E. 10) Plaintiff's claims arise out of a series of telephone calls made to her cellular telephone by Defendant Stellar Recovery ("Stellar") in an attempt to collect a debt owed by Plaintiff to Comcast.

The majority of these calls were made by Stellar using LiveVox's Human Call Initiator ("HCI") system, an outbound dialing system specifically designed and engineered for TCPA compliance. LiveVox's HCI system requires human intervention in order to launch a phone call and lacks the capacity to launch calls without human intervention. For this and the other reasons discussed in detail below and in Defendant's pending Motion for Partial Summary Judgment (D.E. 44), Defendant submits that the LiveVox HCI system is not an automatic telephone dialing system ("ATDS") under the TCPA and thus there is no liability for the calls at issue.

The Plaintiff, however, argues that HCI is an ATDS and that therefore Stellar is liable under the TPCA for all calls made to Plaintiff's cell phone. Plaintiff argues that HCI is an ATDS because although it indisputably does not have the capacity to store telephone numbers, HCI works with a separate component that does store telephone numbers. But this argument ignores the TCPA and the FCC's interpretation of it, because storing telephone numbers is not enough to render a system an ATDS. To be an ATDS, a system must have the capacity to store *and to dial* telephone numbers without human intervention. HCI does not have the actual or potential capacity to dial phone numbers without human intervention, and thus it is not an ATDS.

Plaintiff also ignores the mountain of uncontroverted authority finding that outbound dialing systems that, like HCI, require human intervention to dial do not meet the definition of an ATDS. Instead, Plaintiff posits the illogical view that human intervention means stopping the

1

dialing process rather than facilitating it. Plaintiff offers no legal support for this view, and none exists. Under the applicable law, HCI depends on human intervention to make calls, and in conjunction with its lack of capacity for automated dialing, its inability for random or sequential number generation, and its having no predictive dialing ability, it is not an ATDS.

Based on the argument and legal authority set forth below, the Plaintiff is not entitled to summary judgment, and summary judgment should instead be entered in favor of Stellar with respect to Plaintiff's TCPA claims for calls made with the HCI system.

## II.   RESPONSES TO PLAINTIFF'S STATEMENT OF ALLEGEDLY UNDISPUTED FACTS

11.   "Defendant Stellar uses a company by the name of Livevox, Inc. to call its customers. **Exhibit C – Depo. of Kendra Vallarelli, Stellar Chief Analytics Officer p. 139 L 16-18.**"

a.    <u>Defendant's Response</u>: Disputed in part as irrelevant and not supported by the record with regard to Defendant's use of LiveVox's systems to "call its customers." Defendant does not dispute that it called Plaintiff using two different LiveVox outbound dialing systems: the automated dialing system was used to make the 12 RPC calls and HCI was used to make 23 calls. [**See Stellar's Interrogatory Responses, Interrogatory 13, Page 16, attached hereto as Exhibit A, and Depo. of Rachel Frady, Page 28, Lines 9-12, Page 37, Lines 15-25, Page 38, Lines 1-25, Page 39, Lines 1-25, and Page 40, Lines 1-8, attached hereto as Exhibit B].**

12.   "Livevox's hardware and software data center for Defendant Stellar is located in New York City, a distance of 935 miles from Jacksonville, Florida according to google maps. **Exhibit A – Depo. of Kevin Stark, Livevox Director of Product Management pp. 10-11 L 16-10.**"

a.    <u>Defendant's Response</u>: Disputed in part as not supported by the record. LiveVox does not have a "hardware and software data center for Defendant Stellar." LiveVox has "multiple data centers," with Stellar using only "the New York facility." [**See Depo. of Kevin Stark, Page 10, Lines 16-25, Page 11, Lines 7-8, and Page 56, Line 6 and attached hereto as Exhibit C].**

13.    "Livevox's dialer has the capacity to dial numbers. **Exhibit C – Depo. of Kendra Vallarelli, Stellar Chief Analytics Officer p. 118 L 21-25; p. 119 L 10-13.**"

a.    <u>Defendant's Response</u>: Disputed as not supported by the record. Neither Ms. Vallarelli nor any other witness used the phrase "LiveVox's dialer" at any point in their testimony; this term is a misleading and unfounded legal conclusion that Plaintiff improperly uses here. Thus, there is no record support regarding the capacity of "LiveVox's dialer."

19.    "According to the Metro PCS Call Log, Defendants called Plaintiff Smith's cell phone number 313-718-5938 a total of 49 times between July 18, 2014 through October 23, 2014. **Exhibit E - Metro PCS Call Log.**"

a.    <u>Defendant's Response</u>: Defendant disputes the authenticity of the Metro PCS Call Log in addition to the information contained thereon. The documentary evidence that has been authenticated, which consists of the LiveVox Call Log (**attached hereto as Exhibit F**), reflects that Stellar placed a total of 31 calls to Plaintiff between July 18, 2014 and October 23, 2014.

21.    "Each morning Defendant Stellar uploads 300,000 telephone numbers to the Livevox ATDS system to call daily. **Exhibit C – Depo. of Kendra Vallarelli, Stellar Chief Analytics Officer p. 139-140 L 21-2; Exhibit A – Depo. of Kevin Stark, Livevox Director of Product Management p. 10 L 6-11.**"

a.    <u>Defendant's Response</u>: Disputed in part as not supported by the record. No witness used the term "Livevox ATDS system;" this term is a misleading and unfounded legal conclusion

that Plaintiff improperly uses here. Further, Mr. Stark did not testify regarding the number of telephone numbers that Defendant includes in any file provided to LiveVox.

23.     "Defendant Stellar agents remotely connect and use the Livevox ATDS dialing system located in New York City from their Jacksonville, Florida location. **Exhibit A – Depo. of Kevin Stark, Livevox Director of Product Management p. 24 L 21-1.**"

a.     <u>Defendant's Response</u>: Disputed in part as not supported by the record. Neither Mr. Stark nor any other witness used the term "Livevox ATDS dialing system," a misleading and unfounded legal conclusion Plaintiff improperly uses here. Defendant does not dispute that its agents access LiveVox's systems from a location other than LiveVox's New York City data center, and thus could be said to access those systems "remotely." [**See Depo. of Kevin Stark, Page 24, Lines 6-25, attached hereto as Exhibit C.**]

24. "Livevox's dialer dials 250,000 to 300,000 numbers per day using its RPC (Right Party Connect) campaign and HCI (Human Call Initiator) campaign. **Exhibit C – Depo. of Kendra Vallarelli, Stellar Chief Analytics Officer pp. 141-142 L 21-1.**"

a.     <u>Defendant's Response</u>: Disputed as not supported by the record. Neither Ms. Vallarelli nor any other witness used the phrase "LiveVox's dialer" at any point in their testimony; this term is a misleading and unfounded legal conclusion that Plaintiff improperly uses here. Further, Ms. Vallarelli's testimony was that, on average, Stellar makes approximately 20,000 to 30,000 calls an hour using the RPC service of the LiveVox automated outbound dialing system and approximately 2,500 calls an hour using HCI. [**See Depo. of Kendra Vallarelli, Page 139 Lines 16-25, Page 140 Lines 1-25, Page 141 Lines 1-25, Page 142 Lines 1-5, attached hereto as Exhibit D.**]

4

26. "Livevox's HCI (Human Call Initiator) system dials 2,500 cell phone numbers per hour. **Exhibit C - Depo. of Kendra Vallarelli, Stellar Chief Analytics Officer p. 142 L 2-5.**"

a. <u>Defendant's Response</u>: Disputed as not supported by the record. Ms. Vallarelli's testimony was that, on average, Stellar makes approximately 2,500 calls an hour using HCI. **[See Depo. of Kendra Vallarelli, Page 139 Lines 16-25, Page 140 Lines 1-25, Page 141 Lines 1-25, Page 142 Lines 1-5, attached hereto as Exhibit D.]** In addition, in the LiveVox HCI system, telephone numbers are presented to the clicker agents based upon the availability of "closer agents" to take the calls after they are launched. Calls cannot be launched using the LiveVox HCI system unless closer agents are available to speak with the call recipient. **[See Depo. of Kevin Stark, Page 30, Lines 14-25, Page 31, Line 1, Page 59, Lines 6-20, attached hereto as Exhibit D].**

27. "Defendant Stellar employs persons called "clickers" whose sole purpose is to click on a number which appears on a monitor for the HCI (Human Call Initiator) system dialer. **Exhibit D - Depo. of Rachel Frady, Chief Compliance Officer p. 30 L 11-19.**"

a. <u>Defendant's Response</u>: Disputed in part as not supported by the record. Neither Ms. Frady nor any other witness used the phrase "HCI (Human Call Initiator) system dialer" at any point in their testimony; this term is a misleading and unfounded legal conclusion that Plaintiff improperly uses here.

29. "Livevox's ATDS dialer system uses commercial-grade Dell servers. **Exhibit A – Depo. of Kevin Stark, Livevox Director of Product Management p. 12 L 9-15; pp. 12-13 L 25-5.**"

a. <u>Defendant's Response</u>: Disputed as not supported by the record. Neither Mr. Stark nor any other witness used the term "Livevox's ATDS dialer system," a misleading and unfounded legal conclusion Plaintiff improperly uses here. LiveVox uses, among other pieces of hardware,

commercial-grade Dell servers. [**See Depo. of Kevin Stark, Page 12, Lines 9-15, Page 12 Line 25, Page 13 Lines 1-5, attached hereto as Exhibit C.**]

30.  "Livevox's dialer Campaign Database located in New York City has the capacity to store phone numbers. **Exhibit A - Depo. of Kevin Stark, Livevox Director of Product Management pp. 16-17 L 22-5; p. 18 L 12-15; p. 29 L 6-11.**"

a.      <u>Defendant's Response</u>: Disputed as not supported by the record. Neither Mr. Stark nor any other witness used the term "Livevox's dialer Campaign Database," a misleading and unfounded legal conclusion Plaintiff improperly uses here. The Campaign Database, which is not part of any LiveVox outbound dialing system and cannot make phone calls, has the capacity to store numbers and is located in New York City. [**See Depo. of Kevin Stark, Page 16, Lines 22-25, Page 17 Lines 1-5, attached hereto as Exhibit C.**]

31.  "Livevox's dialer Automated Call Distributor (ACD) located in New York City has the capacity to store phone numbers**. Exhibit A - Depo. of Kevin Stark, Livevox Director of Product Management pp. 20-23 L 20-1; p. 29 L 6-11.**"

a.      <u>Defendant's Response</u>: Disputed as not supported by the record. Neither Mr. Stark nor any other witness used the term "Livevox's dialer Automated Call Distributor (ACD)," a misleading and unfounded legal conclusion Plaintiff improperly uses here. The ACD, which is not part of any LiveVox outbound dialing system and cannot make phone calls, has the capacity to store numbers and is located in New York City. [**See Depo. of Kevin Stark, Page 20, Lines 20-25, Page 21 Lines 1-12, attached hereto as Exhibit C.**]

32.  "Livevox's HCI (Human Call Initiator) system dialer platform is not a stand-alone system, but rather it needs the Automated Call Distributor (ACD), Media server Pool, and Campaign database to function. **Exhibit A - Depo. of Kevin Stark, Livevox Director of Product**

**Management pp. 33-34 L 4-16; Exhibit B – Livevox Architecture Diagram of Dialing Systems.**"

    a.   <u>Defendant's Response</u>: Disputed as not supported by the record. Neither Mr. Stark nor any other witness used the term "Livevox's HCI (Human Call Initiator) dialer platform," a misleading and unfounded legal conclusion Plaintiff improperly uses here. The HCI outbound dialing system is a dialing system; the HCI system works with, among other components, the campaign database, the ACD, and the media server pool. [**See Depo. of Kevin Stark, Page 33 Lines 4-25, Page 34 Lines 1-16, attached hereto as Exhibit C.**]

    36.  "Livevox's Media Server Pool that is used in conjunction with the Livevox HCI (Human Call Initiator) has the capacity to ring a certain number of times before disconnect. **Exhibit A - Depo. of Kevin Stark, Livevox Director of Product Management pp. 48-49 L 22-3.**"

    a.   <u>Defendant's Response</u>: Disputed as not supported by the record. Mr. Stark testified that the HCI system, and the other three LiveVox outbound dialing systems, has the capacity to ring a certain number of times and then hang up. [**See Depo. of Kevin Stark, Page 48 Lines 22-25, Page 49 Lines 1-3, attached hereto as Exhibit C.**]

    37.  "Livevox's dialing system that is used in conjunction with the Livevox HCI (Human Call Initiator) has the capacity to block outgoing calls to Canada. **Exhibit A - Depo. of Kevin Stark, Livevox Director of Product Management pp. 50-51 L 24-10.**"

    a.   <u>Defendant's Response</u>: Disputed as not supported by the record. Neither Mr. Stark nor any other witness used the term "Livevox's dialing system that is used in conjunction with the Livevox HCI (Human Call Initiator)," a misleading and unfounded legal conclusion Plaintiff improperly uses here. Mr. Stark testified that the HCI system, and the other three LiveVox

outbound dialing systems, can be configured to block calls to certain area codes, including area codes associated with Canada. [**See Depo. of Kevin Stark, Page 49 Lines 16-25, Page 50 Lines 1-25, and Page 51 Lines 1-10, attached hereto as Exhibit C.**]

38. "Livevox's dialer that is used in conjunction with the Livevox HCI (Human Call Initiator) has the capacity to do scheduled dialing. **Exhibit C - Depo. of Kendra Vallarelli, Stellar Chief Analytics Officer p. 144 L 1-3.**"

    a. <u>Defendant's Response</u>: Disputed as not supported by the record. Neither Ms. Vallarelli nor any other witness used the term "Livevox's dialer that is used in conjunction with the Livevox HCI (Human Call Initiator)," a misleading and unfounded legal conclusion Plaintiff improperly uses here. Ms. Vallarelli testified that she did not understand that the LiveVox automated outbound dialing system could make "scheduled calls." [**See Depo. of Kendra Vallarelli, Page 145 Lines 4-9, attached hereto as Exhibit D.**] Mr. Stark testified that no LiveVox outbound dialing system has the capacity to do scheduled dialing. [**See Depo. of Kevin Stark, Page 41, Lines 4-16, attached hereto as Exhibit C.**]

39. "Livevox's dialer that is used in conjunction with the Livevox HCI (Human Call Initiator) has the capacity to do predictive dialing. **Exhibit C - Depo. of Kendra Vallarelli, Stellar Chief Analytics Officer p. 145 L 4-9.**"

    a. <u>Defendant's Response</u>: Disputed as not supported by the record. Neither Ms. Vallarelli nor any other witness used the term "Livevox's dialer that is used in conjunction with the Livevox HCI (Human Call Initiator)," a misleading and unfounded legal conclusion Plaintiff improperly uses here. Ms. Vallarelli and Mr. Start both testified that the LiveVox automated outbound dialing system, a system that is separate and distinct from the HCI system, can be used

as a predictive dialer. [**See Depo. of Kendra Vallarelli, Page 145 Lines 4-9, attached hereto as Exhibit D; Depo. of Kevin Stark, Page 35, Lines 14-17, attached hereto as Exhibit C.**]

40.   "Livevox's dialer that is used in conjunction with the Livevox HCI (Human Call Initiator) has the capacity to do broadcast Caller ID using area code 313 from Jacksonville, Florida. **Exhibit C - Depo. of Kendra Vallarelli, Stellar Chief Analytics Officer pp. 94-95 L 19-1; Exhibit A - Depo. of Kevin Stark, Livevox Director of Product Management p. 37 L 3-6.**"

    a.   <u>Defendant's Response</u>: Disputed as not supported by the record. Neither Ms. Vallarelli nor Mr. Stark nor any other witness used the term "Livevox's dialer that is used in conjunction with the Livevox HCI (Human Call Initiator)," a misleading and unfounded legal conclusion Plaintiff improperly uses here. Ms. Vallarelli did not testify regarding the capacity of any LiveVox outbound dialing system to broadcast a particular caller ID. [**See Depo. of Kendra Vallarelli, Page 94 Lines 19-25, Page 95 Line 1, attached hereto as Exhibit D.**] Mr. Stark testified that the HCI system, and the other three LiveVox outbound dialing systems, has the capacity to broadcast a caller ID with the outbound calls. [**See Depo. of Kevin Stark, Page 37, Lines 3-6, attached hereto as Exhibit C.**]

41.   "Livevox's dialer that is used in conjunction with the Livevox HCI (Human Call Initiator) has the capacity to call during specific time zones. **Exhibit C - Depo. of Kendra Vallarelli, Stellar Chief Analytics Officer pp. 113-114 L 22-3; Exhibit A – Depo. of Kevin Stark, Livevox Director of Product Management pp. 37-38 L 24-2.**"

    a.   <u>Defendant's Response</u>: Disputed as not supported by the record. Neither Ms. Vallarelli nor Mr. Stark nor any other witness used the term "Livevox's dialer that is used in conjunction with the Livevox HCI (Human Call Initiator)," a misleading and unfounded legal conclusion Plaintiff improperly uses here. Ms. Vallarelli testified that Defendant uses aspects of

the LiveVox platform to address calling during specific time zones. [**See Depo. of Kendra Vallarelli, Page 113 Lines 22-25, Page 114 Lines 1-9, attached hereto as Exhibit D.**] Mr. Stark testified that the HCI system, and the other three LiveVox outbound dialing systems, has the capacity to block dials that are outside of client-defined time windows. [**See Depo. of Kevin Stark, Page 37, Lines 24-25, Page 38 Lines 1-6, attached hereto as Exhibit C.**]

42. "Livevox's dialer that is used in conjunction with the Livevox HCI (Human Call Initiator) has the capacity to block numbers on the do not call list (DNC). **Exhibit C – Depo. of Kendra Vallarelli, Stellar Chief Analytics Officer p. 114 L 18; Exhibit A - Depo. of Kevin Stark, Livevox Director of Product Management pp. 37-38 L 14-6.**"

a. <u>Defendant's Response</u>: Disputed as not supported by the record. Neither Ms. Vallarelli nor Mr. Stark nor any other witness used the term "Livevox's dialer that is used in conjunction with the Livevox HCI (Human Call Initiator)," a misleading and unfounded legal conclusion Plaintiff improperly uses here. Ms. Vallarelli testified that "DNC is another one, as well." [**See Depo. of Kendra Vallarelli, Page 114 Line 18, attached hereto as Exhibit D.**] Mr. Stark testified that if users of the HCI system provide a DNC list, dials to phone numbers on that list will be blocked. [**See Depo. of Kevin Stark, Page 37, Lines 14-23, attached hereto as Exhibit C.**]

43. "Livevox's dialer that is used in conjunction with the Livevox HCI (Human Call Initiator) has the capacity to limit the frequency of calls to a specific customer. **Exhibit C - Depo. of Kendra Vallarelli, Stellar Chief Analytics Officer p. 114 L 10-14.**"

a. <u>Defendant's Response</u>: Disputed as not supported by the record. Neither Ms. Vallarelli nor any other witness used the term "Livevox's dialer that is used in conjunction with the Livevox HCI (Human Call Initiator)," a misleading and unfounded legal conclusion Plaintiff

improperly uses here. Ms. Vallarelli testified that Defendant uses aspects of the LiveVox platform to adjust the frequency of contact. [**See Depo. of Kendra Vallarelli, Page 114 Lines 10-17, attached hereto as Exhibit D.**]

44.   "Livevox's dialer that is used in conjunction with the Livevox HCI (Human Call Initiator) have multiple backups for power. **Exhibit A - Depo. of Kevin Stark, Livevox Director of Product Management p. 39 L 18-20.**"

a.   <u>Defendant's Response</u>: Disputed as not supported by the record. Neither Mr. Stark nor any other witness used the term "Livevox's dialer that is used in conjunction with the Livevox HCI (Human Call Initiator)," a misleading and unfounded legal conclusion Plaintiff improperly uses here. Mr. Stark testified that LiveVox has multiple backups for power for its various outbound dialing systems and other components. [**See Depo. of Kevin Stark, Page 39, Lines 18-20, attached hereto as Exhibit C.**]

### III.   COUNTERSTATEMENT OF UNDISPUTED FACTS

1.   On August 13, 2014 Stellar stopped calling Plaintiff's number from LiveVox's automated dialing system and began dialing it using the LiveVox Human Call Initiator ("HCI") system. [**See Depo. of Rachel Frady, Page 28, Lines 21-25 and Page 29, Lines 1-3, attached hereto as Exhibit B.**]

2.   From August 12, 2014 through October 28, 2014 Stellar placed 19 calls to Plaintiff's cell phone using the LiveVox HCI system. [**See Stellar's Interrogatory Responses, Interrogatory 13, Page 16, attached hereto as Exhibit A.**]

3.   In May and June 2016, during the pendency of this case, Stellar placed an additional four calls to Plaintiff's cell phone as a result of having a new collection account placed by Comcast with which Plaintiff's phone number was associated. These calls were also placed on the LiveVox

HCI system. [**See Depo. of Rachel Frady, Page 37, Lines 15-25, Page 38, Lines 1-25, Page 39, Lines 1-25, and Page 40, Lines 1-8, attached hereto as Exhibit B.**]

4.      LiveVox offers four separate outbound dialing systems to its clients: one automated outbound dialing system and three human initiated outbound dialing systems. Each LiveVox dialing system is distinct from each other dialing system: each system has its own dedicated and separate hardware and software. [**See Depo. of Kevin Stark, Page 26, Line 15, and Page 49, Lines 8-9, attached hereto as Exhibit C.**]

5.      HCI is one of LiveVox's human-initiated outbound dialing systems. The hardware and software components used by the HCI system to launch telephone calls are not shared with any of the other LiveVox systems; those components are unique to the HCI system. [**See Depo. of Kevin Stark, Page 58, Lines 6-18, attached hereto as Exhibit C.**]

6.      LiveVox's HCI outbound dialing system was architected and designed specifically to comply with the TCPA. [**See Depo. of Kevin Stark, Page 58, Lines 20-24, attached hereto as Exhibit C.**]

7.      The LiveVox HCI system lacks the capacity to store phone numbers. It was expressly designed and built to have no capacity to store phone numbers and is incapable of doing so. [**See Depo. of Kevin Stark, Page 15, Lines 17-19, attached hereto as Exhibit C.**]

8.      No automated or prerecorded messages can be left on a call made using the HCI system. [**See Depo. of Kevin Stark, Page 44, Lines 13-22, attached hereto as Exhibit C.**]

9.      The LiveVox HCI system is not capable of automated or predictive dialing. [**See Depo. of Kevin Stark, Page 57, Lines 19-22, Page 60, Lines 6-12, attached hereto as Exhibit C.**]

10.     A "clicker agent" at Stellar is responsible for initiating each call attempt by Stellar using the LiveVox HCI system. **[See Depo. of Kevin Stark, Page 20, Lines 6-7, and Page 28, Lines 10-11, attached hereto as Exhibit C.]**

11.     The ACD (standing for "automated call distributor") is a separate computer component from the HCI dialing system. It is not part of the LiveVox HCI outbound dialing system. **[See Depo. of Kevin Stark, Page 20, Lines 23-25, Page 28, Lines 15-25; Page 29, Lines 1-8; Page 60, Lines 24-25, and Page 61, Lines 1-5, attached hereto as Exhibit C.]**

12.     In support of HCI, the primary function of the ACD is to present telephone numbers to the HCI clicker agent and to route calls to the closer agents.  The ACD cannot dial a number nor can it generate an outbound call.  **[See Declaration of Kevin Stark, Paragraphs 3,4, attached hereto as Exhibit E.]**

13.     In the LiveVox HCI system, the telephone numbers are presented to the clicker agents based upon the availability of "closer agents" to take the calls after they are launched. **[See Depo. of Kevin Stark, Page 30, Lines 16-23, attached hereto as Exhibit C.]**

14.     Calls cannot be launched using the LiveVox HCI system unless closer agents are available to speak with the call recipient. **[See Depo. of Kevin Stark, Page 30, Lines 14-25; Page 31, Line 1, Page 59, Lines 6-20, attached hereto as Exhibit C.]**

15.     Every call on the LiveVox HCI system requires "direct human intervention—direct human action" **[See Depo. of Kevin Stark, Page 56, Lines 21-22, and Page 36, Lines 9-10, attached hereto as Exhibit C.]**, which consists of "a click of the mouse or press the enter [key] on the keyboard." **[See Depo. of Kevin Stark, Page 56, Lines 23-25 and Page 57, Line 1, attached hereto as Exhibit C.]** Clicker agents also exercise judgment in their launching of calls. **[See Depo. of Kevin Stark, Page 59, Lines 17-20, attached hereto as Exhibit C.]**

13

16. Clicker agents logged on to LiveVox's HCI system cannot be logged on to any other dialing system. [**See Depo. of Kevin Stark, Page 60, Lines 2-5, attached hereto Exhibit C.**]

17. The LiveVox HCI system does not have the capacity to autodial a phone number. [**See Depo. of Kevin Stark, Page 60, Lines 6-8, attached hereto as Exhibit C.**]

18. The LiveVox HCI system does not have the capacity to store or produce numbers to be called using a random or sequential number generator. [**See Depo. of Kevin Stark, Page 60, Lines 9-12, attached hereto as Exhibit C.**]

## IV.   STANDARD OF REVIEW

Summary judgment is appropriate only when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Where the non-moving party bears the burden of proof on an issue at trial, the movant may simply "[point] out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). "There must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby*, *Inc*., 477 U.S. 242, 252 (1986). To avoid summary judgment, the non-moving party "must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Electric. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).

## V.      LEGAL ARGUMENT

**A. Stellar is Not Liable Under the TCPA, Because the HCI System is Not an Automatic Telephone Dialing System (ATDS).**

In her Motion for Summary Judgment, the Plaintiff engages in a lengthy initial discussion concerning damages available under the TCPA, whether prior express consent is necessary or present in this case, and other collateral issues. (See D.E. 38, pp. 9-17.) However, the main issue in this case, particularly as it relates to Stellar, concerns whether the LiveVox HCI system used by Stellar is an Automatic Telephone Dialing System ("ATDS"). At issue are 19 telephone calls placed between August 2014 and October 2014, and 4 calls between May 2016 and June 2016, for a total of 23 calls made by Stellar using the LiveVox HCI system.

Plaintiff's TCPA claim is premised entirely upon her belief that Stellar placed calls to Plaintiff's cellular number using an ATDS. Accordingly, in order to prevail on this claim under the TCPA, the Plaintiff must establish that each call in question was made using an ATDS. The relevant section of the TCPA (47 U.S.C. § 227(b)(1)(A)(iii)) provides:

> (1) PROHIBITIONS – It shall be unlawful for any persons within the United States
>
> (A) To make any call (other than a call…made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice-
>
> (iii) to any telephone number assigned to a…cellular telephone service…

The term "automatic telephone dialing system" is statutorily defined as "equipment which has the capacity to both: (1) store or produce telephone numbers to be called, using a random or sequential number generator, and (2) dial such numbers." 47 U.S.C. § 227(a)(1). Although this definition appears straightforward at first glance, since it was first promulgated in 1991 the FCC has been expanding upon it, and courts have ruled that an appropriate analysis of what constitutes

15

an ATDS must also include the FCC interpretations. *Luna v. Shac*, 2015 WL 4941781 (N.D. Cal. Aug. 19, 2015).

In a 2008 analysis, the FCC opined that the defining characteristic of an ATDS is "the capacity to dial numbers without human intervention," *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 23 F.C.C.R. 559, 566 (Jan. 4, 2008), and in 2012 they referred to the definition of "autodialer" as encompassing "any equipment that has the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers are randomly or sequentially generated or come from calling lists." See *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd. at 15392, n. 5 (November 26, 2012).

Based on this definition, courts analyzing the issue have held that in order for liability to arise as an ATDS under the TCPA, the system in question MUST have the capacity to dial numbers without human intervention. *Glauser v. GroupMe, Inc*., 2015 WL 475111, \*6 (N.D. Cal. Feb 4, 2015); *Luna,* 2015 WL 4941781 at \*5. As one court succinctly stated, "the primary consideration under the FCC order is whether human intervention is required *at the point in time* at which the number is dialed." *Brown v. NRA Grp., LLC,* 2015 U.S. Dist. Lexis 73065, \*6 (M.D. Fla. June 5, 2015) (emphasis added).

Expanding on this, the distinction between equipment which requires human intervention and equipment which does not (and therefore cannot give rise to TCPA liability) has been described as follows:

> The key feature of an ATDS is the capacity to dial numbers without human intervention…. if the agent selects the number to be called, then the call would be made as a result of human intervention, and the call would not be made using an ATDS.

16

*Wilcox v. Green Tree Servicing, LLC*, 2015 U.S. Dist. Lexis 58667 (M.D. Fla. May 5, 2015).

Numerous other courts have addressed dialing systems requiring human intervention to initiate calls; each of those courts has granted summary judgment (or a motion to dismiss) dismissing TCPA claims as a matter of law, repeatedly holding that an outbound dialing system requiring human intervention (even in the form of a single click) in order to place calls (or send text messages) is not an ATDS. See *Strauss v. The CBE Group, Inc*., 2016 WL 1273913, *1, *4-5 (S.D. Fla. March 28, 2016) (granting summary judgment to defendant on calls made using dialing system in which, in order for a call to be made, "an agent must manually initiate the call by clicking a mouse or pressing a keyboard enter key"); *Glauser*, 2015 WL 475111 at *6 (granting defendant's motion for summary judgment and holding dialing system was not an ATDS; human intervention found where user sent telephone numbers to system, which "triggered" system to send texts); *McKenna v. WhisperText*, 2015 WL 428728, *4 (N.D. Cal. Jan 30, 2015) (granting motion to dismiss, system was not an ATDS where it sent automated text messages to list of contacts based on user's single affirmative direction); *Estrella v. Ltd. Fin. Services, L.P*., 2015 WL 6742062, *2- *4 (M.D. Fla. August 24, 2015) (granting defense summary judgment motion and finding that a "point and click" function constituted sufficient human intervention to defeat Plaintiff's TCPA claim); *Marks v. Crunch San Diego, LLC*, 55 F. Supp. 3d 1288, 1292 (S.D. Cal. 2014) (granting defense motion for summary judgment, system not an ATDS where system could only send text messages to numbers entered through "human curation and intervention"); *Gragg v. Orange Cab Co., Inc*., 995 F. Supp. 2d 1189, 1194 (W.D. Wash. 2014) (defendant granted summary judgment; system not an ATDS where human intervention consisted of taxi cab dispatcher pressing "enter" to transmit text message); *Dobbin v. Wells Fargo Auto Fin., Inc*., (N.D. Ill. June 14, 2011)

(granting defense motion for summary judgment and finding that human intervention was required where an agent was required to "click" on a phone number in order to dial it and therefore that the system was not an ATDS).

Indeed, Defendant understands that every court to consider single-click human intervention, such as that LiveVox's HCI system employs to initiate telephone calls, has held that action to be sufficient human intervention for the dialing system not to be considered an ATDS.

Plaintiff makes much of the ACD, going so far as to argue that because the HCI system works in conjunction with the ACD, and because the ACD has the capacity to store numbers, then HCI must be an ATDS. Indeed, Plaintiff's argument is that merely having the capacity to store numbers renders a dialing system an ATDS. (D.E. 38 at 1, 18-19.) This is not the law.

Indeed, Plaintiff's argument fails on at least two grounds. First, the ACD is not part of the HCI outbound dialing system. The ACD does not have a dialing mechanism and does not make phone calls. And the fact that the ACD (a separate component) presents telephone numbers to clicker agents does not transform HCI into an ATDS. A recent district court decision is quite instructive: in *Goad v. Censeo Health, LLC* the court granted summary judgment for a defendant on a TCPA claim where, as with HCI, a separate computer component displayed phone numbers to employees and those employees manually dialed those numbers. See *Goad v. Censeo Health, LLC*, 2016 WL 2944658, *2 (E.D. Ark. May 19, 2016). The *Goad* Court noted that the separate computer component did not have a dialing mechanism and was separate from the dialing system used to place the calls. *Id.* The same result should apply here, because the ACD is a separate computer component that does not have a dialing mechanism and does not place telephone calls.

Second, even if the ACD could be considered part of the HCI outbound dialing system, it would not change the analysis, because storing numbers is not sufficient to qualify a dialing system

as an ATDS. If that were the law, then every smart phone and every other phone with speed-dialing capability would be an ATDS, because each of those devices stores numbers. But the FCC has stated that the TCPA's prohibitions do not cover speed dialing. See *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961 ¶ 17 (FCC July 10, 2015). And speed dialing is akin to the single click of HCI.

The legal basis for this point is clear: the TCPA and the FCC provide that storage alone is not enough for a system to be held to be an ATDS. The system must not only store the numbers, but must *also dial those stored numbers without human intervention*. The FCC is quite explicit on this: "As is demonstrated by these precedents, the outer contours of the definition of 'autodialer' do not extend to every piece of malleable and modifiable dialing equipment that conceivably could be considered to have some capacity, however small, to store and dial telephone numbers— otherwise, a handset with the mere addition of a speed dial button would be an autodialer." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961 ¶ 18 (FCC July 10, 2015). Therefore, Plaintiff's argument—that the interaction between the ACD and HCI renders HCI an ATDS—fails.

Another reason HCI cannot be considered an ATDS is because it lacks the potential capacity to dial without human intervention. The FCC has ruled that a dialing system's "potential functionalities" should be considered when determining whether or not that system is an ATDS. See *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961 ¶¶ 16-20 (FCC July 10, 2015). Expanding on "potential functionality", the FCC stated that it is present in a software system where something can be activated, deactivated, or added to it. *Id.* at ¶ 16, n. 63. HCI was specifically designed and built such that nothing can be added to it, nor activated or deactivated, to enable auto-dialing.

Accordingly, HCI does not have the actual or potential capacity to perform autodialing functions; any capacity to autodial can be found only in an alternative world in which HCI was not designed and built as it actually was. The TCPA, and more specifically, the meaning of "capacity" cannot be read that broadly, for doing so would sweep essentially every piece of dialing equipment within the scope of the statute's definition of ATDS, a result expressly rejected by the FCC.

**B. Plaintiff's Motion Completely Misrepresents the Record Regarding LiveVox's HCI System.**

Throughout her motion, Plaintiff makes repeated references to LiveVox's "dialing system" or Livevox's "dialer" or the "Livevox ATDS system" or "The Livevox Dialing System.[1]" These are terms entirely of Plaintiff's own creation; they are not found in the record.

For instance, nowhere in the deposition of Kevin Stark (LiveVox's Direct of Product Management) did Mr. Stark refer to "The Livevox Dialing System". Nor did Mr. Stark ever use the term "Livevox ATDS dialing system" as Plaintiff asserts in her Statement of Facts. (See D.E. 38, p. 16 of 36, ¶23.) Similarly, Kendra Vallarelli, Stellar's Chief Analytics Officer, never used the term "Livevox's dialer". (D.E. 38, p. 14, ¶13.) Elsewhere in Plaintiff's statement of facts, Plaintiff refers to "Livevox's HCI (Human Call Initiator) system dialer platform" - another term invented by the Plaintiff. Throughout her motion, the Plaintiff has intentionally misrepresented (and sometimes renamed) the various products offered by LiveVox, in order to make LiveVox's HCI system appear to be something it is not. Defendant submits that these persistent mischaracterizations of the record cannot be used to support summary judgment for Plaintiff.

LiveVox's HCI system is not a "platform," and the mere fact that HCI is capable of interacting and does interact with other components and products of LiveVox does not mean that all LiveVox products are part of the same "system" - nor does it mean that HCI assumes the

---

[1] See D.E. 38, p. 1, 5, 12, 32, 33

20

characteristics and capabilities of the other components. A toaster needs a wall outlet with electricity to function. This hardly means that the toaster can now serve as a source of electricity.

HCI also interacts with the public switched telephone network ("PSTN"), an aggregation of telephone networks serving as the infrastructure for public telecommunications. Without the PSTN, a call launched via HCI could not reach its intended recipient. By Plaintiff's logic, because HCI (and every other dialing system) relies on the PSTN, HCI is part of the PSTN, the PSTN is part of HCI, and HCI has all the power of the PSTN.

The record establishes that the HCI system does <u>not</u> have the capacity to autodial any numbers. (Stark Dep. 60:6-8.) Under the HCI system, a "clicker agent" clicks on a number to launch a call, and human intervention is required every time a call is placed. (Stark Dep. 20:6-7; 30:14-23; 56:21-22.)

Given the numerous misrepresentations made in Plaintiff's brief, some clarity concerning LiveVox's business and various products is in order. LiveVox offers four separate outbound dialing systems to its clients: one automated outbound dialing system and three human initiated outbound dialing systems. (Stark Dep. 26:15, 49:8-9.) Each LiveVox dialing system is distinct from each other dialing system: each system has its own dedicated and separate hardware and software. (Id.) This is something the Plaintiff repeatedly confuses in her brief. While the Plaintiff takes the position that *all* of LiveVox's products and dialing systems are interconnected and are used by clients (like Stellar) simultaneously, this is simply not the case.

LiveVox's separate and distinct systems cannot be conflated or reduced to a single outbound dialing system. One court faced with an automated dialer that coexisted with a manual dialer, held that even minimal separation is enough to differentiate the two. *Modica v. Green Tree*, 2015 U.S. Dist. Lexis 55751 (N.D. Ill. Apr. 29, 2015). In *Modica*, neither the automated system

21

nor the manual system in question could dial without an agent being logged in. *Id*. at \*9-11. As the court stated, discussing the manual system (as opposed to the automated system, or "dialer") that the agent was logged into, "It is true that the additional step of logging into the dialer is minimal….nonetheless, [the agent] did not take that step and the equipment…was not capable of dialing numbers…." and was therefore not an ATDS. *Id*. at \*10.

Similarly, clicker agents logged on to HCI cannot be logged on to other dialing systems. The hardware and software components used by the HCI system to launch telephone calls are <u>not shared</u> with any of the other LiveVox system, and those components are unique to the HCI system. (Stark Dep. 58:6-18.) Thus, the HCI outbound dialing system is logically and physically separated from not only the ACD but from LiveVox's automated dialing system, another reason it cannot be considered an ATDS.

What the Plaintiff has done throughout her brief is to intentionally commingle the various products offered by LiveVox into a single "platform." LiveVox, like most other companies, has different products which it designs and sells to third-parties based on different customer needs and requirements. The HCI system, which was developed by LiveVox to be TCPA compliant, lacks the capacity to automatically dial numbers, it cannot place automated or prerecorded messages, and it requires a human (in this case a Stellar representative) to instruct the HCI system to place every single telephone call made. HCI was specifically designed so that it does not have the capacity to autodial, and has its own dedicated software and hardware that is separate from other products. The Court should reject Plaintiff's misrepresentation of the record and deny her motion for summary judgment.

**C. Plaintiff's Motion is Premised on a Definition of "Human Intervention" That is Unsupported by Applicable Law.**

Throughout her motion, Plaintiff takes liberties with the definition of "human intervention." According to Plaintiff, the "FCC necessarily intended that the 'human intervention' that was to be considered must necessarily be *material* and *meaningful* intervention." (D.E. 38, p.31). Plaintiff then declares that "[t]he intervention by a human must be meaningful, deliberative, and material, *e.g.*, individually analyzing and selecting which telephone numbers to dial; dialing them; and, speaking with the person on the other end of the phone." (D.E. 38, p. 32.) Plaintiff then contradicts herself by arguing that "[h]uman intervention means the *stoppage* of a process rather than the effectuation of it".   (*Id.*). Plaintiff offers no real support for her expansive and fluid definitions of what constitutes "human intervention," and indeed there is no support in any applicable law.

The *Gragg* case is helpful here: that action involved a TCPA claim based on the use of a computerized taxi dispatch system. In the system at issue in that case, once a driver presses "accept" to indicate that he or she will pick up the passenger who requested a taxi, the defendant's computer system "then composes the [SMS] notification and transmits the message to the customer's telephone." See *Gragg,* 995 F. Supp. 2d 1189, 1191. The court held that the system was not an ATDS because the driver's input was necessary before the system could draft and send a message. "The system is able to dial and transmit the dispatch notification only after the driver has physically pressed 'accept': human intervention is essential." *Gragg* involved a single press of a single "accept" button - and the court found that this activity meant that that the system could not constitute an ATDS.

*Gragg* is also notable, as the *Gragg* court rejected an argument raised by the Plaintiff in this case, in which the Plaintiff repeatedly suggests that LiveVox's products, if reconfigured for

other uses, could constitute an ATDS and are thus properly defined as such. (See D.E. 38, p. 6-8.) The *Gragg* court emphatically rejected that argument, stating that:

> This argument is not consistent with the language of the statute and its impacts would be untenable. Defendants' system, as presently configured, does not randomly or sequentially generate numbers and is not able to send a text message without human input. It is therefore incapable of performing as an ATDS. The mere fact that defendants' modem could, if paired with different software, develop the requisite capability is not enough under the TCPA or <u>Satterfield</u>. To hold otherwise would subject almost all sophisticated computers and cell phones to TCPA liability, a result Congress surely did not intend. *Id.* at 1196.

In *Gaza v. LTD Fin. Servs., L.P.,* No. 8:14-cv-1012-T-30JSS, 2015 U.S. Dist. LEXIS 111751 (M.D. Fla. Aug. 24, 2015), the plaintiff brought a TCPA claim against a debt collector, arguing that the defendant / collector called him numerous times via an ATDS without his consent. *Id.* at *1. There, the defendant's corporate representative testified that the defendant's system was not an ATDS, because "an agent launched the calls; specifically, the agent pulled up the subject account from a database and then used his mouse to manually click on the phone number associated with the account to launch the call." *Id.* at *2.  The court in *Gaza* concluded that the calls were made with human intervention, and that the plaintiff's TCPA claims "fail as a matter of law because he failed to establish a genuine issue for trial with respect to whether the calls were placed using an ATDS, a necessary element of his claims." *Id.* at *10; *see also Strauss*, 2016 WL 1273913 at *1, *4-5; *Glauser*, 2015 WL 475111 at *6; *McKenna*, 2015 WL 428728 at *4; *Estrella,* 2015 WL 6742062 at *2-4; *Marks*, 55 F. Supp. 3d at 1292.

Plaintiff seeks to rely on *In re Collecto, Inc. Telephone Consumer Protection Act Litig.*, 2016 WL 552459 (D. Mass. Feb. 10, 2016) in support of its argument regarding human intervention, but that case in fact has no applicability here. In *Collecto*, the defendant indisputably used a predictive dialer that automatically called phone numbers on a list of numbers. *Id.* at *2.

The HCI system is not a predictive dialer and does not automatically make phone calls; it lacks the capacity to perform either of those functions.

Plaintiff's improper arguments regarding human intervention should be rejected. Here, the undisputed facts demonstrate that the nineteen calls placed from August 12, 2014 through October 28, 2014, and the four calls that were placed in May and June 2016 were made via LiveVox's HCI system. As demonstrated by the record evidence, all calls made with the LiveVox HCI system required human intervention, specifically, a clicker agent launching each call with the Enter key or a click of a mouse, plus the clicker agent's judgment and discretion in determining when and how rapidly to click. Plaintiff has failed to present any evidence to counter the testimony from non-party LiveVox, which clearly demonstrates that the HCI dialing system *requires* human intervention in order to make a call. The HCI dialing system cannot make calls without human intervention, and does not have the actual or potential capacity to autodial or perform other functions of an ATDS. As a result, HCI is not an ATDS.

## VI.    CONCLUSION

The Plaintiff is not entitled to summary judgment in this case, and based on the undisputed facts and legal authority cited above, summary judgment in Stellar's favor is proper. Here, the record evidence confirms that each of the calls made to Plaintiff on the LiveVox HCI system were made with direct human intervention and independent of any automated or predictive functionality. While Plaintiff takes issue with the "level" of human intervention, such an argument is completely unsupported by applicable law on this issue and such an argument cannot transform a TCPA compliant system into an ATDS. Since the calls at issue were not made on an ATDS, the Plaintiff

is not entitled to judgment as a matter of law with respect to those calls.


Respectfully submitted,

/s/Alison N. Emery
Alison N. Emery
Assurance Law Group
3731 Hendricks Avenue
Jacksonville, FL 32207
904-497-4904 (phone)
904-458-8979 (fax)
alison@assurancelawgroup.com

*Counsel for Stellar Recovery, Inc.*
*and Comcast of Detroit, LLC*

## CERTIFICATE OF SERVICE

I, Alison Emery, Counsel for Stellar Recovery, hereby certify that on August 4, 2016 I
electronically filed the foregoing document and exhibits referenced herein with the Clerk of Court
for the United States District Court, Eastern District of Michigan, Southern Division, using the
ECF system which will send notification of such filing to the attorneys of record.

Respectfully submitted,

/s/Alison N. Emery
Alison N. Emery

26