UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAKISHA T. SMITH,

Plaintiff,

vs.

STELLAR RECOVERY, INC. and
COMCAST CORPORATION, and
COMCAST OF DETROIT, LLC,

Defendants.

Case No.: 15-cv-11717
Hon. Stephen J. Murphy, III
Hon. Magistrate Mona K. Majzoub

**DEFENDANT, STELLAR RECOVERY, INC'S, REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant, Stellar Recovery, Inc. ("Stellar"), by and through its undersigned counsel, hereby files this Reply in Support of Defendant's Motion for Summary Judgment, and states as follows:

### I.     ARGUMENT IN REPLY

**A. Plaintiff Does Not and Cannot Contest Any Of The Material Facts Showing That Stellar Is Entitled To Summary Judgment**

Plaintiff's Response to Stellar's motion for partial summary judgment fails to offer any evidence to contest any material facts offered by Stellar in support of its motion. Plaintiff has conceded those facts, which renders her Response fatally flawed.

Recognizing that she has no record evidence to support her claim that the LiveVox HCI outbound dialing system is an ATDS, Plaintiff instead resorts to unfounded rhetoric and misstatements of the record. For example, Plaintiff continually refers to the "LiveVox HCI Platform System," (Doc. 47, p. 1, 2, 5.), but neither Stellar's nor LiveVox's witnesses ever used that term. Plaintiff self-servingly describes the invented "HCI Platform System" as including the Automated Call Distributor ("ACD"), campaign database, and media server pool. (Doc. 47, p. 2). This assertion is completely unsupported by the summary judgment record, and is in fact directly

contradictory to the record evidence. During his deposition, Kevin Stark, LiveVox's director of product management, testified that the HCI system is separated from those other components:

> Q So the equipment in New York -- and I'm referring to the entire system, if you will, which would include the ACD, the campaign database, and the media server pool; can we refer to that as the dialing system?
> MR. READ: Objection to the form.
> **A Definitely not.**
> Q (By Mr. Thomas) What do you call it?
> A The platform.
> Q The platform? Okay. So we will use it as the platform?
> **A Actually, I would like to correct that. I consider this -- my vernacular would be, this is a collection of distinct dialing systems.**
> Q And each of the dialing systems is used as the media server pool, correct?
> MR. READ: Objection to the form.
> **A I believe, actually, that presently, each system, each outbound dialing system connects to a distinct and separate media server pool…**

(Stark Dep. 26:3-21, attached hereto as Exhibit A.)

Plaintiff also overreaches regarding the fact that the HCI system works with other components: "Without each vital piece," Plaintiff argues, "the LiveVox HCI Platform System would not function." (Doc. 47, p. 2). But the fact that the HCI system works with a media server pool and other components does not render the HCI system an ATDS, because there is no evidence that those components have the capacity to dial without human intervention. And even if Plaintiff could offer any such evidence (an impossibility because none exists), Plaintiff's entire theory of liability under the TCPA would fail, because the HCI system used here unquestionably requires human intervention to launch calls. Faced with the uncontroverted evidence, Plaintiff offers only flawed argument – not facts – regarding the HCI system.

In her Response, Plaintiff cites to the testimony of Mr. Stark, where Mr. Stark notes that if the media server pool was down completely, the HCI system would be unable to place telephone calls. (Doc. 47, p. 3). That is true, but irrelevant, because it does not mean that the HCI system makes calls without human intervention, but rather that the HCI system works with the media

server pool to reach telecommunication carriers. Indeed, Mr. Stark also noted during his deposition that if LiveVox experienced a massive power failure and the ACD went down, then the HCI system also would not function. (Id.) Plaintiff also asserts that "[t]he media server pool is state of the art equipment as testified to by LiveVox's corporate witness." (Doc. 47, p. 4.) Whether the media server pool is state of the art or not is irrelevant, and the features of the media server pool highlighted by Plaintiff (e.g. the ability to detect an answering machine) do not show that the media server has the capacity to autodial. Thus this argument too is irrelevant and fails to show in any way that the HCI system is an ATDS.

Plaintiff's argument not only finds no support in the case law, but it defies common sense. A toaster cannot function without electricity, but that does not mean that the electrical system in someone's kitchen is part of the toaster. The evidence in this case shows that LiveVox's HCI system has many dependencies, not just the ACD and campaign database. For example, the HCI system:

- Needs a live person to act as a clicker agent and a live person to act as a closer agent so that it can function. These individuals are not part of the HCI system.
- Needs the public switched telephone network (PSTN) to function. The PSTN is not part of the HCI system.
- Needs a telecommunications carrier and their networks in order to function. The telecommunications carrier and its networks are not part of the HCI system.
- Needs the internet to function, since calls are made via Voice over Internet Protocol (VOIP), and customers log into their voice portal via the internet. The internet is not part of the HCI system.

In sum, Plaintiff's entire case boils down to the argument that Stellar is liable under the TCPA because the ACD and the campaign database, components with which the HCI system works, have the capacity to store numbers. (Doc. 47, p. 2.) But there is no evidence that the HCI system, when working with the ACD, campaign database, media server pool, and other necessary components, can launch phone calls without human intervention. In fact, as shown in Stellar's

summary judgment motion and not contested by Plaintiff, LiveVox's HCI system was designed specifically to comply with the TCPA: it lacks the capacity to store phone numbers, it is not capable of predictive dialing, and human intervention is required to launch every single call made using the system. (Stark Dep. 58: 20-24, 15:17-19 and 60:6-12, attached hereto as Exhibit A.) In the HCI system, the ACD presents numbers to the clicker agent based on the availability of closer agents, which then requires the clicker agent to decide whether or not to launch the call. The clicker agent cannot launch a call using the HCI system unless a closer agent is available to take that call. (Stark Dep. 30:14-25; 31:1, attached hereto as Exhibit A.) Plaintiff has not and cannot refute this evidence. Plaintiff thus has failed to show a disputed issue of material fact, and summary judgment in Stellar's favor is proper.

Plaintiff also argues that "Kevin Stark testified that the automated dialing system is in fact a predicted dialer." (Doc. 47, p. 5.) But this says nothing about the HCI system, which is indisputably separate from the automated system both logically and physically. (Stark Dep. 9:2-8; 49:4-12; and 58:6-24, attached hereto as Exhibit A.) The undisputed evidence here demonstrates that the HCI system requires human intervention to place each call and is therefore not an ATDS. Whether a separate dialing system offered by LiveVox is capable of predictive dialing has no bearing on Stellar's motion.

Continuing her pattern of relying on irrelevant information, Plaintiff also cites testimony from Stellar's representative stating that the clicker agents employed by Stellar to launch each call only see a telephone number, but no names, notes, or account information regarding the person they are calling. (Doc. 47, p. 6.) Again, this proves nothing. The question is not what information a clicker agent may see, but whether human intervention is required to launch a call using the HCI system: Stellar's agents could place calls using a rotary phone, which is not an ATDS, even if

those agents also did not have any account information available to them when they launched the call.

Finally, Plaintiff argues that "based on how Defendant Stellar Recovery uses the HCI Platform System it is an ATDS under the FCC's 2015 ruling." But Plaintiff offers no evidence or case law to support this bare conclusion. In fact, as discussed further below, Plaintiff seeks to have this Court ignore the wealth of cases finding that a dialing system relying on human intervention through a single click is not an ATDS under the TCPA. Plaintiff has no facts, no evidence, and no rational basis for her argument that the HCI system is an ATDS. Stellar's motion for partial summary judgment should be granted.

### B. The Case Law Cited in Stellar's Motion for Summary Judgment is Applicable and Supports Entry of Summary Judgment in Stellar's Favor.

In response to the unbroken string of directly applicable cases finding that technologies similar to the HCI system do not come within the definition of an ATDS, Plaintiff offers only immaterial distinctions and unsuccessful efforts to disregard this persuasive authority. For instance, Plaintiff argues that *Luna v. Shac*, 122 F. Supp. 3d 936 (N.D. Cal. 2015), is distinguishable because there were antecedent steps used in the technology relevant there that required human intervention (drafting the message, determining the timing, and clicking send), whereas with HCI, all the clicker does is click. (Doc 47, p. 9.) But the system in *Luna* actually had far more automation than the HCI system in the instant case. There, a single click by a human launched multiple text messages. *Id*. at 937. If a single click launching multiple (perhaps hundreds or thousands) of text messages is not an ATDS, then surely a single click launching a single call, and *only* a single call, cannot be an ATDS either. And, of course, here the undisputed evidence not only shows that the Stellar clicker agent exercises judgment and discretion, but that calls cannot be launched unless a closer agent is available, showing that even more human intervention is

present than in the system used in *Luna*. (Stark Dep. 30:14-25; 31:1; and 59:17-20, attached hereto as Exhibit A.)

Plaintiff relies on *Sherman v. Yahoo!,* 150 F. Supp. 3d 1213, 1218 (S.D. Cal. 2105), for the straw-person argument that human intervention requires more than a mere "but-for" causation analysis, because ""[a] person will always be a but-for cause of any machine's action." *Id*. at 1219, citing *Johnson v. Yahoo!*, 2014 U.S. Dist. LEXUS 171325, *17, n.11. But Stellar does not argue that attenuated "but-for" causation is sufficient: the HCI system requires human intervention at the time of launching the call in order for that call to be launched. The Yahoo! text messaging application, which could send thousands of text messages in an automated fashion well after the minimal initial human intervention, simply has no relevance here.

Plaintiff also argues that cases decided before the FCC's July 2015 Order should not be followed. But, as Plaintiff concedes, the FCC's Order did not reverse any of those cases, it simply said that whether a dialing system has the capacity to store numbers to be dialed and to dial those numbers without human intervention should be decided on a case-by-case basis. (Doc. 47 at 10.) That approach is entirely consistent with the many cases finding as a matter of law that a system requiring human intervention to launch calls is not an ATDS. *See, e.g.*, *Marks v. Crunch San Diego, LLC*, 55 F. Supp. 3d 1288, 1292 (S.D. Cal. 2014) (system not an ATDS where it could only send text messages to numbers entered through "human curation and intervention"); *Gragg v. Orange Cab Co., Inc*., 995 F. Supp. 2d 1189, 1194 (W.D. Wash. 2014) (system not an ATDS where human intervention consisted of taxi cab dispatcher pressing "enter" to transmit text message); *Dobbin v. Wells Fargo Auto Fin., Inc*., (N.D. Ill. June 14, 2011) (human intervention required where an agent required to "click" on a phone number to dial it).

Plaintiff also fails to distinguish *Strauss v. CBE Grp., Inc.,* No. 15-62026-CIV-COHN/SELTZER, 2016 U.S. Dist. LEXIS 45085 (S.D. Fla. Mar. 25, 2016). Plaintiff argues the

court "denied reconsideration of its decision because Plaintiff had failed to raise the arguments in its initial brief and not because of a finding on the merits as to whether or not there was an ATDS dialer" (Doc. 47, p. 11.) This is a complete misrepresentation of *Strauss*. There, the court ruled that the calls placed using the defendant's systems were not made using an ATDS because the defendant "presented substantial evidence that human intervention is essential at the point and time that the number is dialed." *Id*. at *13.

Similarly, Plaintiff asks this Court to ignore *Estrella v. Ltd. Fin. Services, L.P*., 2015 U.S. Dist. LEXIS 148249 (M.D. Fla. November 2, 2015), because the plaintiff there supposedly "lacked its proofs". (Doc. 47, p. 11.) But *Estrella* did not turn on a failure of proof; in fact, the *Estrella* Court granted summary judgment for the defendant based on evidence "that the calls were made manually with the use of human intervention through a 'point and click function.'" *Id.* at *3. Plaintiff cannot avoid the application of this holding here. The authority shows that Stellar is entitled to summary judgment dismissing Plaintiff's TCPA claims on calls made using the HCI system.

## CONCLUSION

For all of the above reasons as well as those incorporated from Defendant's Brief in Support of *Motion for Partial Summary Judgment* (Doc. 44), Defendant's Motion for Partial Summary Judgment should be granted.

Respectfully submitted,

**/s/Alison N. Emery**
Alison N. Emery
Assurance Law Group
3731 Hendricks Avenue
Jacksonville, FL 32207
904-497-4904 (phone)
904-458-8979 (fax)
alison@assurancelawgroup.com

**CERTIFICATE OF SERVICE**

      I, Alison Emery, Counsel for Stellar Recovery, hereby certify that on August 18, 2016 I electronically filed the foregoing document and exhibits referenced herein with the Clerk of Court for the United States District Court, Eastern District of Michigan, Southern Division, using the ECF system which will send notification of such filing to the attorneys of record.

      Respectfully submitted,

*/s/Alison N. Emery*
Alison N. Emery
Assurance Law Group
3731 Hendricks Avenue
Jacksonville, FL 32207
904-497-4904 (phone)
904-458-8979 (fax)
alison@assurancelawgroup.com