UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
Case No. 2:15-cv-11717-SJM-MKM

LAKISHA T SMITH,

      Plaintiff,                              Hon. Stephen J. Murphy, III
                                                Hon. Magistrate Mona K. Majzoub

v.

STELLAR RECOVERY, INC;
COMCAST CORPORATION;
COMCAST OF DETROIT, LLC,

      Defendant(s).
_____/

PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S
NOTICE OF SUPPLEMENTAL AUTHORITY (Doc. 56 and 57)

Plaintiff' Lakisha T. Smith respectfully submits its Motion to Strike

Defendants' Notice Supplemental Authority (Doc. 56 and 57) which improperly

seeks to present an inadmissible sham affidavit through the Pozo case (Doc. 57)

and present inapposite and highly distinguishable facts through the Jenkins case

(Doc. 56).  This motion is more fully supported by the attached memorandum in

support.

                                      Respectfully submitted,

                                      /s/ Stephen A. Thomas
Dated: September 13, 2016          STEPHEN A. THOMAS P43260
                                        Attorney for Plaintiff
                                        645 Griswold St., Suite 1360
                                        Detroit, Michigan 48226
                                        313-965-2265
                                        Sthomas@313965bank.com

## MEMORANDUM IN SUPPORT

In Pozo vs. Stellar Recovery Collection Case Number 8:15-cv-929-T-AEP Defendant Stellar used a sham affidavit to convince the Honorable United States Magistrate Judge Anthony E. Porelli to rule in its favor in a HCI case. Unlike the instant case, there were no depositions taken to show the Pozo court that the HCI system has the capacity to store and dial telephone numbers. The Pozo court only had a sham affidavit of a Laurence H. Siegel.

## SHAM DECLARATION OF LAURENCE H. SIEGEL

The following is an outline paragraph by paragraph showing this Honorable court that the affidavit of Laurence H. Siegel is in fact a sham affidavit. See Exhibit 1.

### DECLARATION OF LAURENCE H. SIEGEL

I, LAURENCE H. SIEGEL, hereby declare under the penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. § 1746:

1. My name is Laurence H. Siegel. I am the Executive Vice President of Product Development for LiveVox, Inc. ("LiveVox"). I make this declaration based on my personal knowledge and my review of business records maintained by LiveVox. I am over the age of eighteen (18) years, am of sound mind, have personal knowledge of the facts and matters set forth herein unless noted as based

on information and belief and such are true and correct to the best of my

knowledge.

Plaintiff's response:  No response.

2. As the Executive Vice President of Product Development, 1 am required

to understand and do understand the LiveVox human-initiated calling system

known as the Human Call Initiator ("HCI").

Plaintiff's response:  No response.

3. LiveVox provides hosted calling services, meaning that it provides the

hardware and software for its calling systems. LiveVox's customers, including

Stellar Recovery Collection Agency, Inc. ("Stellar"), access the software through a

secure online portal. LiveVox's customers do not access any LiveVox system by

installing any LiveVox software or hardware on the customer's computer.

Plaintiff's response:  No response.

4. LiveVox offers a comprehensive calling platform to its customers. The

platform has several different and distinct outbound dialing systems, including

both human-initiated dialing systems and an automated dialing system. The

human-initiated dialing systems require an agent to manually initiate a call, and are

designed and built by LiveVox so as not to be capable of automated or predictive

dialing.

Plaintiff's response:  False.  The human-initiated dialing system uses the same server that are used on all of its LiveVox outbound dialing systems, which are capable of automated and or predictive dialing.  In other words the LiveVox HCI system has the capacity to store and or produce numbers to be called using a random or sequential number generator.

See Doc. # 47 Filed 08/04/16 Pg 2 of 12 Pg ID 1179-83.

The LiveVox HCI Platform System has the following:

1.) Automated Call Distributor (ACD)

2.) Campaign database, and

3.) Media server pool

Without each vital piece, the LiveVox HCI Platform System would not function.

See also Livevox, Inc.'s Architecture Diagram of Dialing Systems which illustrated the systems use the same servers.  See Exhibit 2.  The following is taken from LiveVox's corporate witness testimony, which contradicts the Declaration in the Pozo case:

Q. Okay. And does that campaign database, is it able to store numbers?

A. The campaign database can store numbers, yes.

Q. All right. And we already established that the campaign database has the

capacity to store numbers?

A. Campaign database has the capacity to store numbers, yes.

Q. What about the ACD? Does it have the ability to store numbers?

A. Yes.

Q. Okay. So we got the ACD and the HCI and the media server pool. If the HCI

had a failure, a system failure, then there would be no way that numbers would

be dialed, connected for the consumer, correct?

A. If the HCI dialing system went down completely, then the entire HCI dialing

system would be down and no HCI calls would go out.

Q. Okay. And if the media server pool went down, then -- and HCI was still up

and running, there would be no way to generate calls on the HCI system,

correct?

A. If the media server pool were down completely, then any attempt to launch

calls through the HCI -- the HCI dialing system would be unable to reach the

carriers.

Q. And if the ACD went down, power failure went down, heaven forbid some

terrorist or something like that, then the HCI would not be able to launch numbers

or send numbers to the media server pool?

MR. READ: Objection to the form.

A. If ACD went down, there would be no agent activity to launch -- to trigger HCI

calls.

Q. (By Mr. Thomas) So you have to have the ACD up and running, the HCI up

and running, and the media server pool up and running to generate calls using

that system, the ACI system, correct?

A. All three of the systems you just mentioned must be up and operational in

order for the HCI dialing system to function.

Q. All right. And now, could the campaign database go down or does it have to

be up and running to have the HCI campaign working?

A. Campaign database is necessary as well to communicate between the

campaign database and ACD.

Q. So to launch on the HCI, you have to have the campaign database up and

running, you have to have the ACD up and running, you have to have the HCI

Queuer up and running, and you have to have the media server pool up and

running to launch calls using the HCI system, correct?

A. That's correct.

See Doc. # 47 Filed 08/04/16 Pg 2 of 12 Pg ID 1179-81.

The media server pool is state of art equipment as testified to by LiveVox's

corporate witness.

Q. So the media server has the capacity to determine whether it's a live person

or not?

A. Yes.

Q. And the media server has the capacity to determine whether or not it has

reached a voicemail or not?

A. It has that capacity.

Q. And it has the capacity to determine whether or not it's reached an answering

machine or not?

A. That's correct.

See Doc. # 47 Filed 08/04/16 Pg 5 of 12 Pg ID 1181.

Q. (By Mr. Thomas) So you have to have the ACD up and running, the HCI up and running, and the media server pool up and running to generate calls using that system, the ACI system, correct?

A. All three of the systems you just mentioned must be up and operational in order for the HCI dialing system to function.

Q. All right. And now, could the campaign database go down or does it have to be up and running to have the HCI campaign working?

A. Campaign database is necessary as well to communicate between the campaign database and ACD.

Q. So to launch on the HCI, you have to have the campaign database up and running, you have to have the ACD up and running, you have to have the HCI Queuer up and running, and you have to have the media server pool up and running to launch calls using the HCI system, correct?

A. That's correct.

Q. Okay. It's a predictive dialing, correct?

A. It has predictive functionality, yes.

Q. Has predictive functionality, which makes it a predictive dialing?

A. The automated dialing system, I'm comfortable

saying, is a predicted dialer, yes.

See Doc. # 47 Filed 08/04/16 Pg 5 of 12 Pg ID 1182-83.

     5. HCI is one of LiveVox's human-initiated systems. HCI, like all of

LiveVox's human initiated systems, is a distinct system, separated from LiveVox's

other outbound dialing systems at the hardware and software level. HCI uses its

own unique combination of software and hardware that is not shared with any

other LiveVox system. The software underlying HCI is designed only to enable the

type of calls launched in HCI.

Plaintiff's response:  False.  Once again the human-initiated dialing systems uses

the same server that are used on all of LiveVox outbound dialing systems, which

are capable of automated and or predictive dialing.  In other words, the HCI system

does not use its own unique combination of software and hardware, it uses 1.)

Automated Call Distributor (ACD) 2.) Campaign database, and 3.) Media server

pool to function.  Furthermore, the HCI system is shared with the other LiveVox

systems.

See Doc. # 47 Filed 08/04/16 Pg 2 of 12 Pg ID 1179-81.

6. All HCI calls are routed through a set of servers exclusively dedicated to HCI calls.  Those HCI servers cannot launch automated calls.

Plaintiff's response:  False.  The servers dedicated to HCI calls are the same servers used on the all the LiveVox other systems (1. Automated Call Distributor (ACD) 2. Campaign database, and 3. Media server pool).  Therefore, the HCI servers can and do launch automated calls.  Most importantly the HCI system cannot function without the:

1.) Automated Call Distributor (ACD)

2.) Campaign database, and

3.) Media server pool,

which have the all have the capacity to store and dial numbers.

See Doc. # 47 Filed 08/04/16 Pg 2 of 12 Pg ID 1179-81.

7. Every call launched using HCI requires human intervention by an agent: an employee or other person working on behalf of the LiveVox customer making the call. The human intervention takes the form, in part, of a "clicker agent" clicking on a dialogue box to confirm the launching of a call to each particular telephone number. The call will not be launched unless the clicker agent clicks on the dialogue box.

Plaintiff's response:  No response.

10

8. The clicker agent is also able to monitor a real-time dashboard that contains information about "closer agent" availability, number of calls in progress, and related metrics. The closer agent is the agent designated by the LiveVox customer to speak with the call recipient. In addition to the action required by the clicker agent, in order for a call to be launched in HCI, there must be a closer agent who is available to take the call. Further, HCI is designed to allow a clicker agent to control how often calls are made by reviewing the dashboard and making judgments based on that information when deciding when to launch any particular call.

Plaintiff's response: False.  The clicker agent is unable to monitor a real-time dashboard that contains information about "closer agent" availability, number of calls in progress, and related metrics.  The clicker agent has no information as to whether a closer agent is available to take the call.  HCI is not designed to allow a clicker agent to control how often calls are made by reviewing the dashboard and making judgments based on that information when deciding when to launch any particular call.  This is seen through the testimony of Rachel Frady,

Chief Compliance Officer of Defendant Stellar as to how Defendant Stellar actually uses the HCI system.  Note, Defendant Stellar does not have any of its clicker agent monitoring "a real-time dashboard" that contains information about

closer agent availability, number of calls in progress, and related metrics.  The

Declaration of Laurence H. Siegel is just plain malarkey.

Q. All right.  Do you know how the -- is it -- is it not true that the Human Contact

Initiator would -- would click a button on the screen?

A. That's correct.

Q. Okay.  And on that screen there's no names, correct?

A. It's a telephone number.

Q. A telephone number?

A. Yes.

Q. But no names?

A. Correct.

Q. Okay.  And there's no notes, correct?

A. Correct.

Q. And there's no account information, correct?

A. Correct.

Q. Such as, We've already called this person five times today; there's no

information like that?

A. No.  But there's logic on our dialer that wouldn't allow an account to load up if dialed five times.

Q. Okay.  But there's nothing on the -- on the -- on the clicker -- clicker -- what do you -- what do you call the person who does the actually clicking?

A. We -- we refer to them as clickers.

Q. Clickers?

A. Uh-huh.

Q. Okay.  So for the purpose of the deposition, we're going to refer to them as clickers.

A. That's fine.

Q. How many clickers work at Stellar Recovery?

MS. EMERY:  Object to the form.

A. I don't know.

BY MR. THOMAS:

Q. Have you ever observed a clicker working?

A. Uh-huh.  Yes.

Q. Okay.  What do they do?

A. They click phone records.

Q. That -- that number we're talking about?

A. Correct.

Q. On the screen?

A. Yes.

Q. Do they do anything else?

A. They also -- they collect accounts and --

Q. But as they're -- they're doing their clicking duty?

A. No.  It's -- it's separate.

Q. Okay.  So --

A. They have times, designated times.

Q. Okay.  So there's a designated time that -- that the clicker is only clicking numbers?

A. Correct.

Q. Okay.  Not taking calls?

A. Correct.

MS. EMERY:  I'm going to object to the form.

Can you just specify the time period for her, please?

BY MR. THOMAS:

Q. What time period were you referring to in your answer?

A. As recent as this month.

Q. Okay.

MR. THOMAS:  Is that fine?

MS. EMERY:  I think so.  But the system --let's go off the record for a minute.

MR. THOMAS:  Okay.  Definitely.

(Discussion off the record.)

MR. THOMAS:  Back on the record.

BY MR. THOMAS:

Q. Back in 2014, it was a clicker clicking the number?

A. Yes, sir.

See Doc. # 47 Filed 08/04/16 Pg 6 of 12 Pg ID 1183-86.

According to Defendant Stellar's own corporate witness there is only a phone number that the "clicker agent" sees on its monitor and clicks -- no "real-time dashboard" that contains information about closer agent availability, number of calls in progress, and related metrics.  Malarkey.

9. A clicker agent, when logged into HCI, is logged into HCI only and not into any other LiveVox outbound dialing system. To log into any other LiveVox outbound dialing system, the clicker agent would first need to log out of HCI. Plaintiff's response: None.

10. HCI does not use any predictive or other kind of algorithm to engage in predictive dialing of any kind. For example, HCI does not use a statistical algorithm to minimize the time that agents spend waiting between calls, nor does it use an algorithm to minimize the occurrence of a consumer answering a call when no closer agent is available.
Plaintiff's response: None.

11. The HCI system does not have the present capacity to auto-dial; it does not have any features that permit autodialing and there are no features in HCI that can be turned on to enable autodialing.

Plaintiff's response: False.  See response to ¶¶ 4, 5, and 6 above.  The HCI system is connected to servers which have the present capacity to auto-dial.  Therefore, it has features that permit autodialing which can be turned on to enable autodialing.

12. The HCI system does not have the potential capacity to auto-dial; there are no features that can be activated, deactivated, or added to the system to enable auto-dialing. There is no external application programming interface ("API") with which to add software to the system; the components of HCI are designed so as not to be able to transfer a list from one component to another; and the server that launches HCI calls only recognizes a request from the HCI agent presentation layer, which itself requires a click for each call.

Plaintiff's response: False.  See response to ¶¶ 4, 5, and 6 above.  The HCI system uses the same servers that have the capacity to auto-dial.  The servers the HCI system uses can be activated, deactivated, or added to the system to enable auto-dialing.  In other words the servers that the HCI system uses do in fact auto-dial.

13. HCI does not have the capacity to store or produce numbers to be called using a random or sequential number generator.

Plaintiff's response: False.  See response to ¶¶ 4, 5, and 6 above.  The HCI system has the capacity to store or produce numbers to be called using a random or sequential number generator.

Executed on the 4th of March, 2016 in San Francisco/California

/s/ Laurence H. Siegel

## SHAM AFFIDAVIT RULE

The sham affidavit rule is well-established.  It states that "[a] party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony."  *Reid v.Sears, Roebuck & Co*., 790 F.2d 453, 460 (6th Cir. 1986).  This rule "is grounded on the sound proposition that a party should not be able to create a disputed issue of material fact where earlier testimony on that issue by the same party indicates that no such dispute exists."  *Aerel, S.R.L. v. PCC Airfoils, L.L.C.,* 448 F.3d 899, 908 (6th Cir.2006).  *See also Penny v. United Parcel Service,* 128 F.3d 408, 415 (6th Cir.1997) ("[A] party cannot create a genuine issue of material fact by filing an affidavit, after a motion for summary judgment has been made, that essentially contradicts his earlier deposition testimony.").

Notice of Supplemental Authority as to Eduardo Pozo v. Stellar Recovery Collection Agency, Inc. Case No. 8:15-cv-929-T-AEP (Doc. 57) is based on a sham affidavit as outlined above and should be stricken.

## INAPPOSITE AND HIGHLY DISTINGUISHABLE

Notice of Supplemental Authority as to Colette Jenkins v. mGage, LLC, et al., Case No. 1:14-cv-02791-WSD (Doc. 56) is inapposite and highly

18

distinguishable on its facts.  In *Jenkins* an Opera employee had to: (i) navigate to a website; (ii) log into the Platform; (iii) determine the content of the text message; (iv) type the content of the text message into the Platform; (iv) determine whether to send the text message immediately or to schedule a later date to send the message; (v) either click "send" to send the message immediately, or take action to select a later date and time to send the message by using a drop-down calendar function.  In the instant case, Defendant Stellar used Livevox, Inc.'s HCI system which included 1.) Automated Call Distributor (ACD) 2.) Campaign database, and 3.) Media server pool, which stored and dialed telephone in violation of the TCPA. Furthermore, the "clicker agents" employed by Defendant Stellar did not have the ability to use a "real-time dashboard" that contains information about closer agent availability, number of calls in progress, and related metrics.  Hence the  "clicker agents" are merely used to circumvent the requirements of the TCPA.

## CONCLUSION

Obviously the court cannot strike the Declaration of Laurence H. Siegel nor is the Plaintiff requesting the same.  However, the court can and should strike both of the Notices of Supplemental Authorities, Doc. 56 and 57.

WHEREFORE, Plaintiff Smith respectfully prays that this Court strike Doc. 56 and 57.

Respectfully submitted,

/s/ Stephen A. Thomas

Dated: September 13, 2016     STEPHEN A. THOMAS P43260
Attorney for Plaintiff
645 Griswold St., Suite 1360
Detroit, Michigan 48226
313-965-2265
Sthomas@313965bank.com

## Certificate of Service

I, Stephen A. Thomas, hereby state that on September 13, 2016, I

electronically filed the foregoing document with the Clerk of the Court using the

ECF system, which will send notification of such filing to the attorneys of record.

/s/ Stephen A. Thomas

Dated: September 13, 2016     STEPHEN A. THOMAS P43260
Attorney for Plaintiff