UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAKISHA T. SMITH,

        Plaintiff,

Vs.

Case No.: 15-cv-11717
Hon. Stephen J. Murphy, III
Hon. Magistrate Mona K. Majzoub

STELLAR RECOVERY, INC. and
COMCAST CORPORATION, and
COMCAST OF DETROIT, LLC,

        Defendants.

_____

REPLY TO DEFENDANT, STELLAR RECOVERY,
INC.'S RESPONSE TO PLAINTIFF'S NOTICE OF FILING
SUPPLEMENTAL AUTHORITY IN OPPOSITION TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff, Lakisha Smith, respectfully submits the following reply to Defendant's Response to Plaintiff's Notice of Supplemental Authority [DE 64].

## I. BACKGROUND

On November 2, 2016, Plaintiff filed a Notice of Filing Supplemental Authority [DE 62] in Opposition to Defendant's Motion for Partial Summary Judgment [DE 44]. With that notice, Plaintiff provided the Court with a copy of the October 14, 2016, memorandum opinion and order of the U.S. District Court for the Northern District of Illinois in *Espejo v. Santander Consumer USA, Inc.*, No. 11-cv-8987 (N.D. Ill. Oct. 14, 2016). Plaintiff has urged the Court to follow

1

the reasoning of the *Espejo* court in determining that a telephone dialing system which uses a "clicker agent" with no meaningful involvement in the actual placement of a call is still an automatic telephone dialing system ("ATDS") within the meaning of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.  (*See* Notice of Supplemental Authority, DE 62, generally.)

In response, Defendant filed a Response to Plaintiff's Notice of Supplemental Authority [DE 64] in which it argues that the *Espejo* decision is distinguishable from the instant case because the telephone dialing system at issue in *Espejo* is "markedly different" from the LiveVox Human Call Initiator ("LiveVox HCI") dialing system at issue in this case.[1]  (*See* Defendant's Response to Plaintiff's Notice of Supplemental Authority, DE 64, p. 1.)  According to Defendant, unlike the dialing system used by the defendant in *Espejo*, the LiveVox HCI system "requires an agent to click to dial <u>each call</u> manually."  *Id.* at pp. 1-2 (emphasis included).  In support of that contention, Defendant offers an explanation of how the LiveVox HCI dialing system works, which is completely at

---

[1] In the *Espejo* case the court analyzed whether an "Aspect Dialer" was an ATDS.  Although Defendant in this case argues that the Aspect Dialer is "markedly different" from the LiveVox HCI dialing system, LiveVox and Aspect have been in a strategic alliance to integrate their cloud based dialing solutions and market them to companies like Defendant.  *See* "Aspect Software and LiveVox Announce Combined Contact Center Solution with Asepct EQ Workforce Management in the Cloud," http://www.aspect.com/company/news/press-releases/aspect-software-and-livevox-announce-combined-contact-center-solution-with-aspect-eq-workforce-management-in-the-cloud.  The key features of the Aspect Dialer described in *Espejo* and the LiveVox HCI system at issue in this case are virtually identical, as one would expect them to be based on the strategic alliance between those companies.

odds with how Kevin Stark, Director of Product Management of LiveVox, Inc. described that system in his deposition testimony in this case. (*See* Deposition Transcript of Kevin Stark, DE 38-2.)

The deposition testimony of Kevin Stark is critical to this Court's determination of whether the LiveVox HCI dialing system fits within the *Espejo* court's analysis and ultimately whether the LiveVox HCI system is an ATDS within the meaning of the TCPA.

## II. ARGUMENT

The deposition testimony of Kevin Stark establishes the following:

1. LiveVox is a hosted provider of telephone dialing services, which LiveVox's customers access remotely through the Internet. [Kevin Stark deposition transcript, p. 56.]

2. Calls are placed through the LiveVox HCI system through an automated process that has predictive dialer functionality. [Kevin Stark deposition transcript, p. 35.]

3. Before any call is placed, telephone numbers are loaded into, and stored in, a "campaign database" located in New York. [Kevin Stark deposition transcript, pp. 17-18, 20.]

4. An "automated call distributor" or "ACD," which is also located in New York, pulls telephone numbers from the campaign database and presents them to a "clicker agent" based on the availability of "closer agents" to participate in a conversation with the party to be called. [Kevin Stark deposition transcript, p. 30.]

5. The ACD has the capacity to store numbers for the purpose of presenting them to the clicker agent. [Kevin Stark deposition transcript, pp. 20-22.]

6. The ACD has "predictive functionality," which makes it a "predictive dialer." [Kevin Stark deposition transcript, p. 35.]

7. The ACD is the primary component in the LiveVox HCI dialing system. [Kevin Stark deposition transcript, p. 59.]

8. The ACD presents telephone numbers to the clicker agent through an image on a computer screen, which the clicker agent selects by pressing a button on a mouse or hitting "enter" on his or her keyboard. [Kevin Stark deposition transcript, pp. 20, 30, 56-57.]

9. The sole function of the clicker agent is to click on an image on a computer screen, which then transmits the telephone number to the next automated phase of the LiveVox HCI telephone dialing system. [Kevin Stark deposition transcript, pp. 25-26, 30.]

10. After the clicker agent clicks on the image, the telephone number is transmitted to a "media server," which is "a component of the LiveVox platform that interfaces with the carriers that LiveVox uses." [Kevin Stark deposition transcript, pp. 25-26.]

11. The clicker agent is able to rapidly click on the images so that high volumes of telephone numbers are transmitted to the media server within seconds. [Kevin Stark deposition transcript, p. 30.]

12. No live agent is on the call when the "media server" places the call to the carrier that LiveVox uses to connect the call. Instead, the media server uses an automated voice detection system to determine whether a live person answers the call or whether the call is forwarded to a voicemail system or answering machine. [Kevin Stark deposition transcript, p. 40.]

13. The media server "is the gateway to the carriers…[W]ithout [the media server], calls can't go out." [Kevin Stark deposition transcript, p. 61.]

14. If the called telephone number is busy, the carrier returns a busy signal to the LiveVox system. [Kevin Stark deposition transcript, p. 40.]

4

15. If the media server detects that a voicemail system or answering machine answered the call, the call is terminated. [Kevin Stark deposition transcript, p. 43.]

16. If the media server detects that a live person answered the call, the media server then determines whether a closer agent is available to speak with the called party. [Kevin Stark deposition transcript, p. 42.]

17. If the media server detects that a live person answered the call and no closer agent is available to speak with the called party, the called party is placed on hold until a closer agent becomes available. [Kevin Stark deposition transcript, p. 46.]

18. In order for the LiveVox HCI dialing system to place a call, the campaign database, the ACD, and the media server all need to be functional and "up and running." [Kevin Stark deposition transcript, p. 34.]

19. The LiveVox HCI dialing system is not able to place a call without the use of the ACD and media server.

20. When the clicker agent clicks on an image on the computer screen, the call is not placed to the carrier for dialing.

21. Instead, the call is transmitted to a media server, which utilizes an automated voice detection application and places the call to the carrier without a live agent being on the call.

Kevin Stark's deposition testimony makes clear that the LiveVox HCI dialing system is not able to place a call without the use of the ACD and media server. When the clicker agent clicks on an image on the computer screen, the call is not placed to the carrier for dialing. Instead, the call is transmitted to a media server, which utilizes an automated voice detection application and places the call to the carrier without a live agent being on the call.

The TCPA provides, in part:

5

> (b) RESTRICTIONS ON THE USE OF AUTOMATED TELEPHONE EQUIPMENT.—
>> (1) PROHIBITIONS.—It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>>> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) *using* any automatic telephone dialing system or an artificial or prerecorded voice—
>>> * * *
>>>> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call…

47 U.S.C. §§ 227(b)(1)(A)(iii) (emphasis added).

Under the TCPA, the mere "use" of an ATDS in the process of placing a call is sufficient to subject that call to the prohibitions of Section 227(b)(1)(A). Moreover, the meaningless use of a brief, "human" element to transmit a telephone number from an ACD with predictive dialer functionality to an automated media server, which places calls without a live person being on the line, does not remove the LiveVox HCI dialing system from the scope of Section 227(b)(1)(A). This is the essence of the *Espejo* court's analysis, and it applies equally well to the LiveVox HCI dialing system, as it did to the dialing system at issue in that case. *See Espejo v. Santander Consumer USA, Inc.*, Nos. 11-cv-8987 and 12-cv-9431, 2016 WL 6037625, *4, 2016 U.S. Dist. LEXIS 142259, *11 (N.D. Ill. Oct. 14, 2016) ("That '*some* act of human agency occurs at some point in the process' does nothing to place [the defendant's] automated 'dialer' beyond the TCPA's reach,

since a person 'will always be a but-for cause of any machine's action.'") (emphasis included).

### III. CONCLUSION

WHEREFORE, Plaintiff Latisha Smith hereby requests that this Court consider the *Espejo v. Santander Consumer USA, Inc* case, which was decided after the parties filed their Motions for Summary Judgment, and apply its reasoning to determine that Defendant's telephone dialing system is an ATDS within the meaning of the TCPA.

Respectfully submitted,

/s/ Stephen A. Thomas

November 15, 2016  STEPHEN A. THOMAS P43260
Attorney for Plaintiff
645 Griswold St., Suite 1360
Detroit, Michigan  48226
313-965-2265
sthomas@313965Bank.com

### CERTIFICATE OF SERVICE

I, Stephen A. Thomas, hereby state that on November 15, 2016, I filed the foregoing document using the court's CM/ECF System, and all counsel of record will receive the same.

/s/ Stephen A. Thomas
Attorney for Plaintiff