UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**LAKISHA T. SMITH,**

       **Plaintiff,**            **CIVIL ACTION NO. 15-cv-11717**

      **v.**                        **DISTRICT JUDGE STEPHEN J. MURPHY**

**STELLAR RECOVERY, INC.,**      **MAGISTRATE JUDGE MONA K. MAJZOUB**
**et al.,**

       **Defendants.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff LaKisha T. Smith brings this action against Defendants Comcast Corporation, Comcast of Detroit, LLC (collectively, "Defendant Comcast"), and Stellar Recovery, Inc. (Docket no. 10.)  Plaintiff alleges that Defendant Stellar Recovery used an automatic dialer to call her cell phone dozens of times regarding a Comcast debt, in violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p, the Telephone Consumer Protection Act, 47 U.S.C. §§ 151-231 ("TCPA"), and various provisions of state law.  Before the Court is Plaintiff's Motion for Partial Summary Judgment (docket no. 38), and Defendant Stellar Recovery's Motion for Partial Summary Judgment (docket no. 44).  The parties filed responses and replies to the motions.  (Docket nos. 47, 48, 52.)  The parties also filed supplemental authorities (docket nos. 56, 57, 62, 70), motions to strike (docket nos. 49, 58, 67), and other responsive pleadings regarding the supplemental authorities and motions to strike (docket nos. 60, 61, 63, 64, 65, 66, 68.)  Non-party LiveVox, Inc. filed a Response (docket no. 53), to one of Plaintiff's Motions to Strike, and Plaintiff filed a Reply (docket no. 55.)

This action has been referred to the undersigned for all pretrial proceedings. (Docket no. 25.) The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I. RECOMMENDATION

For the reasons stated herein, the undersigned recommends that Plaintiff's Motion for Partial Summary Judgment [38] be **GRANTED IN PART AND DENIED IN PART**, and Defendant Stellar Recovery's Motion for Partial Summary Judgment [44] be **GRANTED**. Plaintiff should be awarded summary judgment on her claims arising from each call Defendant Stellar Recovery made using its RPC outbound dialing system. There are questions of fact, however, regarding whether Plaintiff is entitled to treble damages on these calls and regarding the number of calls made, and therefore regarding the total amount of damages. Defendant Stellar Recovery should be awarded summary judgment on all of Plaintiff's claims arising from calls made using the HCI system.

Plaintiff's Motion to Strike Kevin Stark's Errata Sheet [49], and Motion to Strike Defendant's Notice of Supplemental Authority [58] should be **DENIED**. Finally, Defendant's Motion to Strike Plaintiff's Reply to Defendant's Response to Plaintiff's Notice of Filing Supplemental Authority [67] should be **DENIED.**

## II. REPORT

### A. Background

#### 1. The TCPA

The Motions for Partial Summary Judgment both concern only Plaintiff's TCPA claims against Defendant Stellar Recovery.[1] The TCPA prohibits the use of an "automatic telephone dialing system" to call a person's cellular phone, unless the person gives prior consent or the call is made for emergency purposes. 47 U.S.C. § 227(b)(1)(A)(iii). An automatic telephone dialing system, or ATDS, is defined as "equipment that has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* (a)(1).

The statute provides for a private right of action and damages in the amount of $500 per call. *Id.* (b)(3). It is "essentially a strict liability statute which imposes liability for erroneous unsolicited [calls]." *Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir. 2011) (citation omitted). If, however, the court determines that the calls were made "willfully or knowingly," the court has discretion to award treble damages. 47 U.S.C. § 227(b)(3).

---

[1] Plaintiff briefly argues that "the undisputed evidence is overwhelming that Defendants violated the Plaintiff's right to privacy in its unjustified robodialing conduct toward her. The Court should also rule, as a matter of law, that Defendants violated Plaintiff's right to privacy as well, and grant summary judgment to her on those counts of the Complaint as well." (Docket no. 38 at 35.) Plaintiff also states that "Defendants Comcast Corporation and Comcast of Detroit, LLC are equally liable for [Defendant Stellar Recovery's] conduct under a 2008 FCC Order regarding robodialing by debt collectors." (*Id.* at 12-13.)

Plaintiff makes no further argument on either of these issues. Plaintiff's request for summary judgment on her invasion of privacy claims and her TCPA claims against Defendant Comcast should therefore be denied due to Plaintiff's failure to properly develop an argument. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (citations omitted).

The undersigned notes that the FCC has ruled that "a creditor on whose behalf an autodialed . . . call is made to a wireless number bears the responsibility for any violation of the Commission's rules. Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call." *In re Rules and Regulations Implementing the TCPA of 1991*, 23 FCC Rcd. 559, 565 (Jan. 4, 2008). Nevertheless, Plaintiff does not provide sufficient proof in her Motion to establish that Defendant Stellar Recovery was acting on behalf of Defendant Comcast.

3

In her Motion, Plaintiff contends that Defendant Stellar Recovery, a debt collection agency, used an automatic telephone dialing system, ("ATDS" or "autodialer"), to knowingly and willfully call her 53 times regarding a debt owed to Defendant Comcast. She claims that the calls were made without her prior express consent, and after she filed Chapter 7 bankruptcy and subsequently had the debt discharged. (Docket no. 38 at 12-13.) Defendant Stellar first disputes the total number of calls made, claiming that it called Plaintiff only 35 times. (Docket no. 44 at 8.) Defendant Stellar further responds that it contacted Plaintiff using two different outbound "dialing systems": Right Party Connect ("RPC") and Human Call Initiator ("HCI"). Defendant Stellar concedes that the RPC is an ATDS, and that it used the RPC to contact Plaintiff from July 18, 2014 until August 12, 2014. (*Id.* at 8-9.) Defendant Stellar argues, however, that the undisputed facts establish that HCI, which Defendant began using on August 12, 2014, is not an ATDS, such that Defendant Stellar is entitled to summary judgment regarding all the calls made using that system. (*Id.* at 7-8.)

The primary issue in the motions for partial summary judgment is, therefore, whether the HCI system used by Defendant Stellar Recovery is an ATDS.

### 2. *Defendant Stellar Recovery's Systems*

Defendant Stellar Recovery contacts debtors for its clients, such as Defendant Comcast, using a web-based call provider called LiveVox, Inc. (Docket no. 44 at 9.) LiveVox hosts a number of different "outbound dialing systems," two of which were used to contact Plaintiff in this case, the RPC system and the HCI system. (Docket no. 38-10.) All of the hardware and software required to use these dialing systems is owned and maintained by LiveVox; Stellar employees access the LiveVox systems by logging into a specific website. (Docket no. 38-2 at 13, 58.) For their descriptions of the systems used by Defendant Stellar Recovery in this case,

the parties both primarily rely on the deposition testimony of Ms. Kendra Vallarelli and Mr. Kevin Stark. Ms. Vallarelli is the Chief Analytics Officer for Defendant Stellar Recovery. (Docket no. 38-4 at 11.) Mr. Stark is the Director of Product Management for LiveVox, Inc. (Docket no. 38-2 at 8.)

Ms. Vallarelli testified that each day management-level employees at Stellar upload hundreds of thousands of telephone numbers into LiveVox, which then groups the phone numbers into "campaigns" and "scrubs" the phone numbers, meaning that various restrictions to dialing are assigned based on the debtor's time zone and other considerations, such as the law of the state where the debtor resides.[2] (Docket no. 38-4 at 113-15, 139-40, 151.) The campaign file is then assigned to one of the outbound dialing systems. In the RPC system, the managers at Stellar Recovery then simply click "play," and LiveVox begins to automatically dial all of the numbers within the campaign. (*Id.* at 117.) Mr. Stark testified that the RPC system has "predictive functionality," which means that it times the dialing of the phone calls based on predictions regarding the availability of operators, or agents, to answer the call. (Docket no. 38-2 at 37, 59-60.) And, if a debtor does answer the phone call, the call is automatically transferred to one of the available operators. (Docket no. 38-4 at 117.)

When a manager clicks "play" in HCI, Ms. Vallarelli explained, the system begins to run the campaign by presenting telephone numbers to "clicker agents," who "have to accept and confirm each individual telephone number" in order for the LiveVox system to place the call. (*Id.* at 153.) If a debtor answers the call, other agents called "closer agents," "have to sit and be ready for those telephone calls to come back to them." (*Id.* at 153-54.) Ms. Vallarelli explained that one of the "biggest difference[]" between RPC and HCI is that the management team

---

[2] Ms. Vallarelli testified that, for example, New York state only allows collection agencies to contact debtors twice per week. (Docket no. 38-4 at 115.)

controls RPC, "the pace, the telephone calls, when they go and when they stop," but that the clicker agents control, "on an individual basis, the telephone numbers through HCI." (*Id.* at 154.) She also explained that RPC, unlike HCI, is capable of leaving automated messages. (*Id.* at 155.) Another employee of Defendant Stellar Recovery, Chief Compliance Officer Rachel Frady, testified that if the HCI system detects a voicemail (instead of a live person), the call is automatically terminated. (Docket no. 70 at 6-7.) If the HCI system detects a live person, the person is automatically connected with an agent, or occasionally placed on hold until an agent is available. (*Id.* at 7.)

Mr. Stark testified that none of the software or hardware used in the HCI system is used by any of the other calling systems, and that the HCI dialing system is unique in that it lacks the capacity to perform predictive dialing. (Docket no. 38-2 at 28, 59-62.) He further testified that the HCI system is cloud-based, and "cannot store numbers . . . there is nothing that can be added, activated, deactivated to that system that would allow for number storage within the HCI dialing system." (*Id.* at 18, 21.) Rather, Mr. Stark testified, the numbers are stored in a "campaign database" on a LiveVox server, and "presented to the [clicker] agent" through a system component called an Automatic Call Distributor, or ACD. (*Id.* at 22.) Mr. Stark testified that the ACD lacks any kind of "persistent" storage capacity. (*Id.* at 24.) Once the clicker agent clicks the number, the HCI dialing system connects to a "media server pool," which connects to a "carrier" which, in turn, essentially places the call. (*Id.* at 42-43.) Mr. Stark testified that "each outbound dialing system connects to a distinct and separate media server pool." (Docket no. 38-2 at 28.)

    **B.**    **Standard**

Summary judgment is appropriate where the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox Cty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Covington*, 205 F.3d at 915. A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Ultimately, a district court must determine whether the record as a whole presents a genuine issue of material fact, drawing "all justifiable inferences in the light most favorable to the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)*; Hager v. Pike Cty. Bd. of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

**C.**     **Analysis**

Since the passage of the TCPA in 1991, and largely in response to issues created by technological advances that have radically altered the teleservices industry, the Federal Communications Commission (the "FCC") has issued a number of relevant orders clarifying or interpreting the prohibition on the use of autodialers. The parties do not dispute, and the undersigned finds, that these interpretations are binding on the court. *Wright v. Target Corp.*, No. 14-cv-3031, 2015 WL 8751582, at *5 (D. Minn. Dec. 14, 2015) (citing 28 U.S.C. § 2342, which grants "exclusive jurisdiction" to the "court of appeals" to "enjoin, set aside, suspend . . ., or to determine the validity of--(1) all final orders of the Federal Communications Commission"); *see also Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1307 (11th Cir. 2015) ("District courts may not determine the validity of FCC orders, including by refusing to enforce an FCC interpretation . . . .").

Additionally, a July 10, 2015 FCC Order regarding autodialers is at issue in this case, *In re Rules & Regs. Implementing the TCPA of 1991*, 30 F.C.C.R. 7961 (FCC July 10, 2015) (the "*2015 TCPA Order*"). The majority of the calls at issue in this case took place between July 18 and October 23, 2014, and therefore prior to the issuance of the *2015 TCPA Order*. Nevertheless, "[a]gency adjudications generally have retroactive effect." *Wright*, 2015 WL 8751582, at *6. Courts "have drawn a distinction between agency decisions that 'substitut[e] new law for old law that was reasonably clear,' and those which are merely 'new applications of existing law, clarifications, and additions." *Qwest Servs. Corp. v. FCC*, 509 F.3d 531, 539 (D.C. Cir. 2007) (quotation omitted). Clarifications of existing law "carry a presumption of retroactivity that [courts] depart from only when to do otherwise would lead to 'manifest injustice." *Id.* (quotation omitted). As the court pointed out in *Wright*, nearly all of the petitions leading to the issuance of the *2015 TCPA Order* requested declaratory rulings or clarifications.

8

*Wright*, 2015 WL 8751582, at *6. Moreover, the *2015 TCPA Order* specifically states that the FCC intends to "*strengthen* the core protections of the TCPA by *confirming* that . . . ." *2015 TCPA Order*, 30 F.C.C.R. at 7965. Finally, the parties do not dispute the application of the *2015 TCPA Order*. Accordingly, the undersigned finds the *2015 TCPA Order* is merely a clarification of the existing rules regarding autodialers, and therefore should be applied retroactively.

The *2015 TCPA Order* provides, in relevant part:

12. The TCPA defines "automatic telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." In the *2003 TCPA Order*, the Commission found that, in order to be considered an "automatic telephone dialing system," the "equipment need only have the 'capacity to store or produce telephone numbers." The Commission stated that, even when dialing a fixed set of numbers, equipment may nevertheless meet the autodialer definition.

13. In the *2003 TCPA Order*, the Commission described a predictive dialer as "equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." In the 2008 *ACA Declaratory Ruling*, the Commission "affirm[ed] that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers." . . . .

14. The Commission declined to distinguish between calls to wireless telephone numbers made by dialing equipment "paired with predictive dialing software and a database of numbers" and calls made "when the equipment operates independently of such lists and software packages." Recognizing the developments in calling technology, the Commission found that "[t]he basic function of such equipment, however, has not changed—the *capacity* to dial numbers without human intervention." The Commission found it troubling that predictive dialers, like dialers that utilize random or sequential numbers instead of a list of numbers, retain the capacity to dial thousands of numbers in a short period of time and that construing the autodialer definition to exclude predictive dialers could harm public safety by allowing such equipment to be used to place potentially large numbers of non-emergency calls to emergency numbers, a result that the TCPA was intended to prevent. The Commission concluded that the TCPA's unqualified use of the term "capacity" was intended to prevent circumvention of the restriction on making autodialed calls to wireless phones and

9

> emergency numbers and found that "a predictive dialer falls within the meaning and statutory definition of 'automatic telephone dialing equipment' and the intent of Congress."
>
> 15. We agree with commenters who argue that the TCPA's use of "capacity" does not exempt equipment that lacks the "present ability" to dial randomly or sequentially. We agree that Congress intended a broad definition of autodialer, and that the Commission has already twice addressed the issue in 2003 and 2008, stating that autodialers need only have the "capacity" to dial random and sequential numbers, rather than the "present ability" to do so. Hence, any equipment that has the requisite "capacity" is an autodialer and is therefore subject to the TCPA.

30 F.C.C.R. at 7972-74 (footnotes omitted). The *2015 TCPA Order* further clarifies that "parties cannot circumvent the TCPA by dividing ownership of dialing equipment." *Id.* at 7977. "In other words, various pieces of equipment and software can be combined to form an autodialer." *Estrella v. Ltd. Fin. Servs., LP*, Case No. 8:14-cv-2624-T-27AEP, 2015 WL 6742062, at *2 (M.D. Fla. Nov. 2, 2015) (citation omitted).

### 1. HCI System

Plaintiff argues that HCI dialing system constitutes an autodialer under the TCPA and the *2015 TCPA Order*. In essence, her argument is as follows: (1) the TCPA prohibits the use of equipment which has the capacity to store, randomly generate or produce phone numbers from a list, and dial those numbers; (2) to function, the HCI dialing system has to communicate with LiveVox's campaign database, Automatic Call Distributor, and media server pool; (3) the campaign database and the ACD have the capacity to store phone numbers and produce them for the clicker agents; (4) the media server pool has the capacity to dial; (5) therefore, the HCI system violates the TCPA. (Docket no. 38 at 12-13.)

Defendant Stellar Recovery responds that the HCI equipment is configured in such a way that it *cannot* dial phone numbers without the clicker agents initiating the call, and therefore the system, while clearly an advanced and efficient method of contacting debtors, is not an

autodialer. Mr. Stark testified that, when the HCI dialing system is in use, the equipment cannot store numbers, nor can it dial numbers without the call being initiated by the clicker agents. (Docket no. 38-2 at 16-17, 30.) As the FCC has explained, the "basic function" of an autodialer is the capacity to dial phone numbers "without human intervention." *2015 TCPA Order*, 30 F.C.C.R. at 7973 (citation omitted). When the HCI system is in use, human intervention—the function of the clicker agents—is clearly required.

The undersigned notes that the FCC has interpreted "capacity" broadly, finding that "a piece of equipment can possess the requisite 'capacity' to satisfy the statutory definition of 'autodialer' even if, for example, it requires the addition of software to actually perform the functions" of an autodialer. *2015 TCPA Order*, 30 F.C.C.R. at 7975. Mr. Stark testified, however, that the HCI system includes both software and hardware components, that these are not shared by the RPC or any of the other dialing systems, and that they are unique to the HCI system. (Docket no. 38-2 at 60.) Plaintiff did not present proof to dispute this; for example, proof that the HCI hardware components could run the RPC program, or proof that the HCI system is simply a software program without its own uniquely configured hardware components.

At least one other court considering the same HCI system found that it did not constitute an autodialer. *See Pozo v. Stellar Recovery Collection Agency, Inc.*, No. 8:15-cv-929-T-AEP, 2016 WL 7851415 (M.D. Fla. Sept. 2, 2016). Regarding the HCI system's capacity, the court reasoned that:

> Of course, Stellar could hypothetically hire a team of programmers to modify and rewrite large portions of HCI's code to enable HCI to make autodialed calls, eliminating clicker agents, the dashboard, and all human input. However, the fact that Stellar *might* be able to undertake such a pointless endeavor does not mean that HCI has the "capacity" to be an autodialer or that it has the "potential functionality" to be an autodialer within the meaning of the TCPA and the 2015 Order.

11

*Pozo*, 2016 WL 7851415, at *5. The undersigned agrees.[3]

Plaintiff also challenges the role of the clicker agents, arguing that the clicker agents do not meaningfully intervene in the calling process, and therefore the HCI dialing system should be considered an autodialer. She relies in part on the case of *Espejo v. Santander Consumer, USA*, Nos. 11-C-8987, 12-C-9431, 2016 WL 6037625 (N.D. Ill. Oct. 14, 2016). In that case, the court found that the defendant's dialing system constituted an autodialer. *Id.* at *4. However, the system at issue in that case is distinguishable; indeed, it more closely resembles Defendant Stellar's RPC system: "when agents log-in and press buttons indicating their availability, the Aspect system's dialer responds to these agent-initiated signals by dialing numbers from the uploaded list, using an algorithm designed to efficiently match available agents to answered calls." *Id.* In the HCI system, by contrast, it is the clicker agents who confirm the availability of agents to answer calls; until they do so, the calls are not dialed. Plaintiff also cites *In re Collecto, Inc.*, No. 14-MD-092513-RGS, 2016 WL 552459 (D. Mass. Feb. 10, 2016), in which the caller was also found to have used an autodialer. The dialing system in that case also more closely resembles Defendant Stellar Recovery's RPC system. In *Collecto*, the dialing system required the debt collection agency's employees to first create call lists, then, when they log into the calling system, they had to "select[] a 'group' of call lists to initiate calls. The [dialing system] then automatically call[ed] the numbers on the list. Based on the employee's predicted availability, the dialer . . . connect[ed] the recipient of the call with the employee logged onto that 'group.'" *Id.* at *2.

---

[3] The undersigned notes that Plaintiff contends that *Pozo* was decided on the basis of a "sham affidavit" provided by Laurence H. Seigel, the Executive Vice President of Product Development for Livevox. (Docket no. 58 at 2.) However, the undersigned has reviewed Mr. Stark's testimony, and finds the analysis in *Pozo* still applies in light of the description of the HCI system Mr. Stark provided.

Moreover, as the court pointed out in *Pozo*, other courts have upheld the use of dialing systems which employ a "'point and click' function." 2016 WL 7851415, at *5 (collecting cases). One such case, *Strauss v. CBE Group, Inc.*, 173 F. Supp. 3d 1302 (S.D. Fla. 2016), even involved a debt collection agency, like Defendant Stellar Recovery, which used two different systems to contact the plaintiff. *Id.* at 1307. The court found that one of the systems was a predictive dialer and therefore violated the TCPA, but that the other system "at least as [the defendant] has configured it," requires an agent to "manually initiate the call by clicking a computer mouse or pressing a keyboard enter key." *Id.* at 1307. The court granted summary judgment to the defendant for the claims arising from calls made using that system. *Id.* at 1311. Plaintiff is correct that the *2015 TCPA Order* provides that "[h]ow the human intervention element applies to a particular piece of equipment is specific to each individual piece of equipment, based on how the equipment functions and depends on human intervention, and is therefore a case-by-case determination." 30 F.C.C.R. at 7975. However, the undersigned finds the cases that involve systems which require a person to initiate each individual call, like *Strauss*, instructive.

Plaintiff has failed to create a genuine material dispute of fact over whether the HCI dialing system constitutes an autodialer. Defendant Stellar Recovery indisputably began using the HCI system to contact Plaintiff starting August 12, 2014. (Docket no. 44-3.) Therefore, summary judgment should be awarded to Defendant Stellar Recovery on Plaintiff's TCPA claims arising from all calls made on or after August 12, 2014.[4]

    2.    *RPC System & Treble Damages*

---

[4] Defendant Stellar Recovery's Motion only seeks summary judgment on Plaintiff's TCPA claims arising from the calls made using the HCI system. (*See* Docket no. 44.)

13

From July 18, 2014 until August 12, 2014, however, Defendant Stellar Recovery used the RPC system to contact Plaintiff's cell phone. (Docket no. 44-3.) Defendant concedes that the RPC system is an "automated dialer system." (*See* Docket no. 44 at 9.) Defendant Stellar Recovery also does not dispute that it lacked Plaintiff's consent to make the calls, and there is proof in the record—Ms. Vallarelli's testimony—that it did not. (Docket no. 38-4 at 163 (Q. "So you indicated that you did not have consent to dial the [cell phone] number (313) 718-5938, correct?" A. "Correct.") These calls therefore clearly violate the TCPA, and Plaintiff is entitled to summary judgment and damages on her claims arising from these calls.

As discussed above, the TCPA "is essentially a strict liability statute which imposes liability for erroneous unsolicited [calls]," in an amount of $500 per call. *Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir. 2011) (citations omitted). If, however, the court finds the defendant "willfully or knowingly" violated the statute, "the court may, in its discretion, increase the amount of the award" to $1500 per call. 47 U.S.C. § 227(b)(3).

The TCPA does not define "willfully or knowingly." Plaintiff argues that the caller "need only intend to make the calls to the specific number using their auto-dialer." (Docket no. 38 at 28.) At least one court in this district has held, however, that a plaintiff must at least show that the caller "knew that they acted in *a manner that violated the statute* (regardless if Defendants actually knew that they were violating the statute)." *Harris v. World Fin. Network Nat'l Bank*, 867 F. Supp. 2d 888, 895 (E.D. Mich. 2012) (denying treble damages where caller/creditor "could not have known" that the phone number given by a debtor actually belonged to the plaintiff). The undersigned agrees with the *Harris* court's interpretation.

The TCPA does not prohibit the use of an autodialer to dial landlines. *See* 47 U.S.C. § 227(b). And, although Defendant Stellar Recovery makes no legal or factual argument on this

14

issue at all, the undersigned notes that deposition testimony from Ms. Rachel Frady, the Chief Compliance Officer of Defendant Stellar Recovery, reflects that at some point in time, Defendant Stellar Recovery believed that the cell phone number at issue in this case, (313) 718-5938, was actually Plaintiff's home phone number. (Docket no. 38-5 at 25.) Her testimony was as follows:

> Q. The next line, (313) 714-5938 added, and it says home, correct?
> A. Yes, sir.
>
> Q. And so that would be RPC as well, correct?
> A. Correct.
> . . . .
>
> Q. Okay. Based on [defense counsel's] stipulation, that is [Plaintiff's] cell phone number, but it's listed in your notes as a home line, correct?
> A. Yes.
>
> Q. Why is that?
> A. I can't tell you why that is.

(*Id.* at 25-27.)

Viewed in the light most favorable to Defendant Stellar Recovery, the undersigned finds that the above-quoted testimony creates a question of fact regarding whether Defendant Stellar Recovery knew it was contacting a cell phone when it was using the RPC system (i.e., whether Defendant knew it was acting in a manner that violated the TCPA), and therefore whether Plaintiff is entitled to treble damages for each call made using the RPC system between July 18, 2014, and August 12, 2014. *See Harris*, 867 F. Supp. 2d at 895.

There is also a question of fact regarding the number of calls made between July 18, 2014, and August 12, 2014. Defendant Stellar Recovery's LiveVox call log shows that twelve calls were made. (Docket no. 44-3.) Plaintiff's Metro PCS call log shows that 15 calls were made. (Docket no. 38-6.) Additional proof is therefore necessary to resolve the question of how many calls were made.

### 3. *Motions to Strike*

After fully briefing their Motions for Partial Summary Judgment, the parties continued to argue their positions using supplemental authorities, and thereafter engaging in a flurry of responsive pleadings regarding the supplemental authorities.

First, Defendant filed two Notices of Filing of Supplemental Authority. (Docket nos. 56, 57.) Plaintiff filed a Motion to Strike the supplemental authorities offered by Defendant Stellar Recovery, arguing that one of the authorities Defendant provided, the *Pozo* case discussed above, relies on a "sham affidavit," and that the other authority is distinguishable. (Docket no. 58 at 18-19.) Defendant filed a Response (docket no. 60) and Plaintiff filed a Reply (docket no. 61). Plaintiff's Motion should be denied. The court is capable of reviewing the authorities and assigning them the appropriate weight based on the facts of this case, including the facts as set forth in Mr. Stark's deposition testimony. Also, the authorities cited were decided after the parties filed their respective motions for partial summary judgment, and the filing of such supplemental authority has precedent in this district. *See In re CMS Energy ERISA Litigation*, 312 F. Supp. 2d 898, 904 n.3 (E.D. Mich. 2004).

Plaintiff also filed her own Notice of Supplemental Authority. (Docket no. 62.) Defendant filed a Response (docket no. 64), arguing that Plaintiff's supplemental authority is distinguishable, and Plaintiff filed a Reply (docket no. 66). Defendant then moved to strike Plaintiff's Reply, arguing that the Reply simply rehashes arguments Plaintiff has made in other pleadings and should therefore be considered an improper sur-reply to Plaintiff's Motion for Partial Summary Judgment. (Docket no. 67.) The undersigned has reviewed Plaintiff's Reply, and finds that, indeed, it does not raise any new arguments or points that would change the above analysis regarding the HCI system. Both parties are advised to seek leave of court before filing

pleadings which are not provided for by the local rules; nevertheless, Plaintiff's Reply is arguably responsive to Defendant Stellar Recovery's Response to Plaintiff's supplemental authority. The undersigned therefore recommends denying Defendant Stellar Recovery's Motion to Strike. (Docket no. 67.)

Finally, Plaintiff filed a Motion to Strike Kevin Stark's Errata Sheet relating to Mr. Stark's deposition testimony. (Docket no. 49.) LiveVox, Inc., which is not a party to this action, filed a Response (docket no. 53), and Plaintiff filed a Reply (docket no. 55.) Plaintiff's position is that one of the changes on the errata sheet violates Federal Rule of Civil Procedure 30(e) and Sixth Circuit precedent because it improperly attempts to substantively change Mr. Stark's deposition testimony and because no reason was given regarding why the change was necessary.[5] In the errata sheet, Mr. Stark seeks to make the following change:

> Existing Text: The automated dialing system, I'm comfortable saying, ***is a predicted dialer***, yes.
>
> Corrected Text: The automated dialing system, I'm comfortable saying, ***can be used as a predictive dialer***, yes.

The "Reason" identified is, "Correction." (*See* docket no. 53-2 at 3.)

Federal Rule of Civil Procedure 30(e) provides:

(1) *Review; Statement of Changes*. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

> (A) to review the transcript or recording; and
> (B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

---

[5] Plaintiff also briefly argues that the errata sheet was untimely, and that LiveVox failed to provide an "Officer's Certificate that a review was requested by Kevin Stark." (Docket no. 49 at 1.) However, the deposition took place on June 15, 2016, and LiveVox presents proof that the errata sheet was signed on July 6, 2016, which is well within the 30 day time period prescribed by Rule 30(e). (Docket no. 53-2.) As for the "Officer's Certificate" argument, the undersigned finds that Defendant has failed to properly develop it and it is therefore waived.

> (2) *Changes Indicated in the Officer's Certificate*. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

The Sixth Circuit has indeed stated that Rule 30(e) "does not allow one to alter what was said under oath," and that "a plaintiff may not create a factual issue by filing an affidavit that contradicts her earlier deposition testimony." *Trout v. First Energy Generation Corp.*, 339 F. App'x 560, 565-66 (6th Cir. 2009). In that case, the deponent attempted to change the date on which she allegedly observed a workplace hazard in order to minimize her delay in reporting the hazard. Originally, she testified that she observed the hazard on January 20, 2006; later, she denied observing the hazard that date, and swore that she did not see it until February 2. *Id.* at 565. Here, however, the correction at issue is hardly a contradiction of Mr. Stark's deposition testimony. A computer system that *is* a predictive dialer certainly can *be used* as a predictive dialer. Moreover, immediately prior to the disputed testimony, Mr. Stark testified that that the RPC system "has predictive functionality." (Docket no. 38-2 at 37.) Furthermore, Defendant Stellar Recovery concedes that the RPC system is an autodialer, of which predictive dialers are a subset under the FCC rules. (Docket no. 44 at 9; *see also 2015 TCPA Order*, 30 F.C.C.R. at 7972-74.) Finally, the undersigned has recommended summary judgment in Plaintiff's favor regarding the calls made using the automated RPC system, which the disputed testimony concerns. Under these circumstances, the undersigned concludes that Mr. Stark's correction to his deposition testimony is permissible under Rule 30(e) and *Trout*, and Plaintiff's Motion to Strike (docket no. 49) should be denied.

### D. Conclusion

For the reasons stated above, the undersigned recommends that Plaintiff's Motion for Partial Summary Judgment [38] be **GRANTED IN PART AND DENIED IN PART**, and

Defendant Stellar Recovery's Motion for Partial Summary Judgment [44] be **GRANTED**. Plaintiff should be awarded summary judgment on her claims arising from each call Defendant Stellar Recovery made using its RPC outbound dialing system. There are question of fact, however, regarding whether Plaintiff is entitled to treble damages on these calls and regarding the number of calls made, and therefore regarding the total amount of damages. Defendant Stellar Recovery should be awarded summary judgment on all of Plaintiff's claims arising from calls made using the HCI system.

Plaintiff's Motion to Strike Kevin Stark's Errata Sheet [49], and Motion to Strike Defendant's Notice of Supplemental Authority [58] should be **DENIED**. Finally, Defendant's Motion to Strike Plaintiff's Reply to Defendant's Response to Plaintiff's Notice of Filing Supplemental Authority [67] should be **DENIED.**

### III. NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: February 7, 2017          s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE

### PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Plaintiff and counsel of record on this date.

Dated:  February 7, 2017         s/ Lisa C. Bartlett
                                 Case Manager